CENTRAL TRUST Co. and another *v.* WABASH, ST. L. & P. RY. Co.
and others.     (CLEARY, Intervenor.)[1]

*(Circuit Court, E. D. Missouri.* March 24, 1886.)

1. RAILROADS—CROSSINGS—GATES—NEGLIGENCE.
   At railroad crossings in populous cities, where gates and watchmen are
   provided, teamsters have a right to suppose, when the gates are opened and
   no warning to the contrary is given, that they can proceed with entire safety.
2. SAME—DUTY OF ENGINEER.
   Where, when the gates are opened, a teamster starts to drive across the
   tracks, and an engineer in charge of an approaching train, sees him, it is the
   engineer's duty to stop his train, and in that way avoid an accident if pos-
   sible.
3. SAME.
   Where, under such circumstances, the teamster does not notice the train,
   and the engineer fails to stop in time, and runs over the wagon and team,
   the railroad company is liable.

In Equity.     Exceptions to master s report.

Petition for $500 damages for negligently running over a wagon
and team belonging to the intervenor.     The facts, as shown by the
evidence introduced, are substantially as follows:     At the Twenty-first
street crossing of the Wabash tracks, in the city of St. Louis, there
are two gates,—one on the north and one on the south side of the
tracks,—which, when closed, prevent teams from attempting to cross.
They are both in charge of an employe of the receivers, and are kept
closed when the tracks are in use, and open when they are free.     On
the morning of April 29, 1885, the intervenor's team, together with
others, had been waiting for some time at the north gate for an oppor-
tunity to pass south, the gates being closed.     At that time a switch-
engine and crew were switching a Wabash car on the track near the
north gate, and the rear end of the car was about on a line with the
east side of Twenty-first street, the switch-engine being still further
east.     At the precise time of the accident, and perhaps for a minute or
more before, this engine and car were standing still.     Next south of
this switching train was a second switch or side track, and next south
of that the main Wabash track.     On the last-named track the Keo-
kuk train, operated by the receivers, was coming west from the Union
depot, on time, at the usual rate of speed.     A team had passed north
over the tracks, and reached the north gate in the rear of the switch-
ing train, and the watchman had raised the gate part way to let it
out.     At that instant the intervenor's driver started through under
the partially raised gate.     Several parties cried out to him to stop,
but he either did not hear or paid no attention, and drove right on to
the main Wabash track, looking neither to the right or left, and his
team was run over by the outcoming train, and both horses fatally
injured.     The wagon also was damaged.     It seems that the driver

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

did not see or notice the train, but the engineer in charge of the train saw him coming in time to have stopped the train and avoided the accident, but, supposing the driver would stop, did not apply the brakes until it was too late.    The master reports that inasmuch as the train might have been stopped in time by the use of proper diligence, the intervenor is entitled to recover.    .

*I. C. Terry*, for intervenor.

*H. S. Priest* and *Geo. S. Grover*, for receivers.

TREAT, J., (*orally*.)    The exceptions are overruled, not only for the reasons stated by the master, but for the following additional reasons: At the crossings in a populous city, where gates and watchmen are provided, passengers and pedestrians have a right to suppose when the gates are opened, and no warning to the contrary given by the watchmen, that they can proceed with entire safety.    If accidents should happen through the gross negligence of the management of the gates by the watchmen connected therewith, *prima facie* the railway company must answer for the damages sustained.    Trifling matters as to the movements of the passenger or pedestrian in crossing, under such circumstances, cannot exonerate the railway company, whose duty it was to protect said crossing, and give warning as to the safety thereof.

Master's report confirmed.