## MAGGIE YONKERS, Respondent, v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, April 7, 1914.

1. **RAILROADS: Violation of Ordinance: Crossing Gates.** The violation of a municipal ordinance, requiring railroad companies to erect gates at all street crossings, and, unless opened and closed automatically, to keep a watchman to open and close them, is negligence *per se.*

2. ———: **Injury at Crossing: Crossing Gates: Contributory Negligence.** The fact that gates are maintained at a railroad crossing and that they are open, constitutes an invitation to a pedestrian to pass over the crossing and an assurance to him that no danger need be feared from an approaching train, and while he is not so far relieved of the duty to look and listen that he could go blindly and heedlessly upon the track, relying wholly upon the fact that the gates are not closed, nevertheless his duty to look and listen is modified to a great extent by reason of such invitation and assurance of safety.

3. ———: ———: ———: ———: **Question for Jury.** In an action for injuries sustained by a person who drove in front of an approaching train upon a crossing, where it was shown that crossing gates maintained by defendant were not closed immediately before the passage of the train, as required by a municipal ordinance, *held,* under the evidence, that the question

of whether plaintiff was guilty of contributory negligence in failing to look and listen before driving on the track was a question for the jury; plaintiff's duty in this regard being modified by the fact that the open gates constituted an invitation to her to cross and an assurance that no train was approaching.

Held, by REYNOLDS, P. J., dissenting, that the evidence showed that if plaintiff had looked before going upon the track, she could have seen the approaching train, which was running at a very low rate of speed, in time to have remained off of the track, and hence she was guilty of contributory negligence as a matter of law, barring a recovery.

### On Motion for Rehearing.

4. EVIDENCE: Opposed to Physical Facts: Probative Force. The court is not bound by testimony demonstrated to be false by the other. facts in the case, or so utterly opposed to the physical facts as to be utterly unworthy of belief.

5. RAILROADS: Injury at Crossing: Contributory Negligence: Physical Facts. In an action for injuries sustained by a person who drove in front of an approaching train upon a crossing, held that plaintiff's testimony, that she looked for approaching trains before going upon the track, should not be rejected as utterly opposed to physical facts.

Held, by REYNOLDS, P. J., dissenting, that plaintiff's testimony that she looked before going upon the track and did not see the train, was opposed to the physical facts.

6. NEGLIGENCE: Violation of Law or Ordinance: Contributory Negligence. Where there is a flagrant violation of a law or municipal regulation, resulting in an injury, contributory negligence must be clearly made out before defendant can be relieved from liability on that ground.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*James F. Green* for appellant.

(1)   A clear case of contributory negligence on part of plaintif was established by the evidence, and the court should have so declared.   Kelsay v. Railroad, 129 Mo. 365; Dyrcz v. Railroad, 238 Mo. 33; Burge v.

Railroad, 244 Mo. 76; Laun v. Railroad, 216 Mo. 563; Stottler v. Railroad, 204 Mo. 619; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Sanguinette v. Railroad, 196 Mo. 466; Hook v. Railroad, 162 Mo. 569; Lien v. Railroad, 79 Mo. App. 475; Jones v. Barnard, 63 Mo. App. 501; Drake v. Railroad, 61 Mo. App. 562; Hayden v. Railroad, 124 Mo. 566; Ries v. Railroad, 179 Mo. 1; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 673; Stepp v. Railroad, 85 Mo. 229; Butts v. Railroad, 98 Mo. 272; Haffey v. Railroad, 154 Mo. App. 493; Sims v. Railroad, 116 Mo. App. 572; Gumm v. Railroad, 141 Mo. App. 313; Farris v. Railroad, 167 Mo. App. 392; Houston v. Railroad, 95 U. S. 702. (2) Under the evidence offered in the case, a verdict for plaintiff could only be the result of passion or prejudice and should not be permitted to stand. Spohn v. Railroad, 87 Mo. 74; Lehnick v. Railroad, 118 Mo. App. 616; State v. Primm, 98 Mo. 373; Whitsett v. Ransom, 89 Mo. 258; Baker v. Stonebraker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Garrett v. Greenwell, 92 Mo. 125; Rosecrans v. Railroad, 83 Mo. 678; Cook v. Railroad, 94 Mo. App. 425. (3) The court erred in refusing to give defendant's instruction No. 9. Dudley v. Railroad, 171 Mo. App. 657; Hutchinson v. Railroad, 161 Mo. 253; McGee v. Railroad, 214 Mo. 547. (4) The court erred in admitting incompetent testimony on part of plaintiff, particularly the testimony of witness Becker.

*Edward W. Foristel* and *A. R. Taylor* for respondent.

(1) The case made on the issue of defendant's negligence in failing to obey the ordinance and keep a watchman there to open gates when no train was to be expected and close them when there was danger of an approaching train is one of clear, undisputed neg-

ligence, as the failure to obey the ordinance was negligence *per se.* Dram v. Railroad, 86 Mo. 574; Hanlon v. Railroad, 104 Mo. 381; Ashby v. Gravel Road Co. 99 Mo. App. 185. (2) The case made on the failure to ring the bell eighty rods from the crossing and to constantly sound it until the engine crossed the crossing, though the evidence was conflicting, was on the evidence for the jury to decide, the rule of decision being that if there is any evidence to support the issue the question of fact is for the jury. Gratiot v. Railroad, 116 Mo. 466; Powers v. Railroad, 202 Mo. 280; McNulty v. Railroad, 203 Mo. 479. (3) Upon the issue of the failure to ring the bell eighty rods from this crossing the fact that witnesses in a position to hear testify that they did not hear the bell is evidence that the bell was not so rung. Gratiot v. Railroad, 116 Mo. 466. (4) With the issue settled upon the evidence by the verdict of the jury, that the statute requirement as to ringing the bell eighty rods from the crossing and constantly until the engine crossed the crossing, was not obeyed, then the effect of such failure to so ring the bell made a prima-facie case for the plaintiff and placed upon the defendant the burden of proving that the failure to ring the bell was not the cause of the injury, and this by force of the statute of itself. Section 3140, Rev. St. 1909, as construed in the following cases: Huckshold v. Railroad, 90 Mo. 556; McNulty v. Railroad, 203 Mo. 479. (5) Where the evidence shows, as in this case, that the plaintiff traveler was invited by the act of the defendant, to-wit, by having the gate to the crossing open, which was just as much an invitation to this plaintiff to go over the crossing as if the watchman in person had issued the invitation in words, then if injured through this wrongful act of the culprit defendant, her conduct is to be viewed in the light of the fact that she had the assurance from the defendant that she was safe

182 Mo. App.—36

in crossing the tracks. This is reason and human ex-
perience which is the unfailing light for judicial in-
quiry. This presumption this plaintiff had a right to
rely upon and act upon. Montgomery v. Railroad,
181 Mo. 501; Weigman v. Railroad, 223 Mo. 719; Ken-
nayde v. Railroad, 45 Mo. 255; Donohue v. Railroad,
91 Mo. 363; Boyce v. Railroad, 120 Mo. App. 172;
Mayer v. Railroad, 71 Mo. App. 142; Millsap v. Beggs,
122 Mo. App. 12; Conaty v. Railroad, 164 Mass. 572;
Railroad v. Stegemeier, 118 Ind. 309.

ALLEN, J.—This is an action for personal in-
juries sustained by plaintiff by reason of a collision of
defendant's train with a wagon in which plaintiff was
riding, at a street crossing in the city of St. Louis.
Plaintiff recovered and the defendant prosecutes the
appeal.

Defendant's tracks pass through the southern
portion of the city of St. Louis, crossing Broadway,
a public street in said city. At this point such tracks
extend nearly east and west, Broadway extending
north and south. Two tracks were here maintained
by the defendant, at the time in question, one, the
south track, for the use of eastbound trains, and the
other, the north track, for the use of westbound
trains; and at the southeast corner of the intersection
of such tracks and the aforesaid street the defendant
maintained a passenger station. Along Broadway
were double street car tracks crossing defendant's
tracks.

At the time of plaintiff's injury the defendant
maintained gates or guards at such crossing, intended
to be lowered across Broadway upon the approach of
a train. It seems that the defendant then maintained
a watchman at said place to lower such gates or guards,
upon the approach of a train, only during the day, and
not after seven o'clock in the evening; that such gates
were sometimes lowered at night by a police officer

when trains were passing, but that after seven o'clock
p. m. no one was charged with such duty. Plaintiff
was driving a covered spring-wagon, drawn by two
horses, and proceeding south along Broadway on the
evening of June 4, 1909, between 8:30 and 9:00 o'clock
p. m. The gates had not been lowered, and plaintiff
drove upon defendant's south or eastbound track,
when the team and wagon were struck by an east-
bound passenger train of defendant, inflicting upon
plaintiff the injuries for which she sues.

The petition alleges that the defendant was neg-
ligent in having such gates or guards elevated at said
time, whereby plaintiff was invited to drive over its
tracks. And an ordinance of the city of St. Louis is
pleaded requiring every corporation running or oper-
ating engines or cars propelled by steam power across
any street in said city, used for wagon travel, to erect
a gate or gates, and, unless the same are opened and
closed automatically, to keep a watchman to open and
close the same, who shall close them immediately be-
fore the passage of any engine, car or train of cars.
And it is averred that the defendant did construct and
maintain such gates, but that the latter did not operate
automatically, and that defendant neglected to provide
a watchman to lower the same before the passage of
the train which caused plaintiff's injuries.

A further assignment of negligence consists of
the alleged failure of the defendant to cause the bell
upon its engine to be constantly sounded while such
engine was moving within the city of St. Louis, in
violation of an ordinance of said city. And it is fur-
ther alleged that defendant negligently failed to cause
such bell to be rung eighty rods from said crossing
and to be kept constantly ringing until such engine
should pass the crossing in violation of the statute.
[Sec. 3140, Rev. Stat. 1909.]

The answer is a general denial, coupled with a
plea of contributory negligence.

Plaintiff lived upon a farm with her husband near the city of St. Louis, and had for many years been engaged in delivering fruits, vegetables, etc., to persons in such city. Upon the evening in question it appears that she was driving south along the western side of Broadway, and that in order to deliver some berries on the east side of the street she crossed over the double street car tracks and stopped her wagon near the east curb, approximately one hundred feet west of defendant's railroad tracks; though there is some confusion in the testimony as to the movements of the wagon prior to the collision. It was raining, and it is said that the night was dark and foggy. Plaintiff testified that after delivering her berries on the east side of Broadway she stopped to put covers on her horses, that she then looked and saw that the gates were open, and thereupon proceeded to drive south toward defendant's tracks; that upon approaching the latter she looked both to the east and to the west, but did not see the train approaching from the latter direction. The wagon in which she was riding was equipped with curtains at the sides and rear which, it seems, were down at this time. Plaintiff testified that she sat upon a seat at the front of the wagon, with her feet outside of the latter. It appears that there was a small glass in the curtain immediately to the right or west of the seat upon which plaintiff says she was sitting, through which she could look to the west.

With respect to driving upon defendant's tracks, plaintiff, on direct examination, testified in part as follows:

"A. I put the horse covers over my horses and got on the wagon and started on my way home. I listened and I didn't hear no bell, nor I didn't hear anything, and went on my way. I saw the poles up— that is, just a short distance away from where I started I saw the poles up, and when I approached the track I listened again, but I didn't hear anything, nor I

didn't see anything, so I started across; I thought when the poles were up I was safe." . . .

"When I was done selling the berries I covered my horses with horse covers and then I listened and I didn't hear nor see anything, and I saw the poles up. . . . When I approached the track I looked east and then looked west and I didn't know—I really didn't know what struck me, but I was on the south track when I got struck." . . .

"Q. You say before you got on the wagon you looked and saw the poles up and then started to drive away. How far were you from the poles when you looked the next time? A. Just approaching the track, and when I got on the track. I listened and I looked east and I kept on my way and then I looked west. It was kind of rainy and foggy like; it was kind of late in the evening, half past eight, something like that."

On cross-examination plaintiff said: "Before I came there I was stopped selling berries, and when I got to the crossing I slowed my horses and I looked east and I looked west and I didn't see the train."

Plaintiff also testified that she heard no bell nor did she hear the noise of the approaching train, and that, though she looked west before driving upon the eastbound track, she did not see the headlight of the approaching train. On behalf of plaintiff, two witnesses testified that they were with plaintiff at her last stopping place and saw her start toward the tracks, but heard no bell at such time.

It appears that at the time of the accident there were no buildings or obstructions along the west side of Broadway, north of defendant's tracks, excepting a little watchman's shanty which it is said stood some twenty-five feet from the south or eastbound track, and that the view in that direction was unobstructed for some blocks.

It appears that when plaintiff drove upon the defendant's track as aforesaid, a street car which was proceeding south on Broadway, had stopped in front of the railroad crossing to allow the train to pass; and that a street car going north had likewise stopped just south of the railroad tracks. Plaintiff, it seems, in approaching defendant's tracks was east of the southbound street car, which was standing north of defendant's railroad tracks, and her view to the west was obstructed thereby until she had passed the same. It is said, however, that this car stopped with the front portion thereof within perhaps fifteen feet of the eastbound track; and it seems that after passing the same there was nothing to obstruct plaintiff's view to the west.

The train which struck plaintiff was coming to a stop at defendant's station at this point, and it appears that it approached this crossing at a speed of perhaps four miles per hour. It was equipped with an electric headlight; and defendant's evidence goes to show that the whistle was sounded for the crossing, and that the bell was kept constantly ringing. On behalf of defendant there was testimony of witnesses who saw the team and wagon approaching the crossing, and who testified that they saw no one on the front seat thereof, and that it appeared to them that the driver, if there was one, was back within the enclosed wagon. And there was further testimony on behalf of defendant tending to show that plaintiff did not look or listen before driving upon the defendant's tracks; that others heard the noise of the approaching train, and saw the headlight thereof, which was bright and cast its rays far ahead of the engine, and that there was nothing to prevent plaintiff from seeing the same in time to avoid driving upon the track upon which the train was approaching.

The foregoing statement of facts, together with certain portions of the evidence to which we may direct

special attention in the course of the opinion, will suffice for a determination of the questions involved in the appeal. The only serious question involved pertains to the action of the trial court in overruling defendant's demurrer to the evidence and sending the case to the jury. Learned counsel for appellant earnestly insists that the evidence conclusively shows that plaintiff neither looked nor listened for the train when she came within what may be termed the danger zone; that plaintiff's assertion that she did so look and listen is so far opposed to the physical facts in evidence, as well as to the testimony adduced by defendant, as to be unworthy of consideration; and that plaintiff should be declared to be guilty of negligence as a matter of law and denied a recovery. It is upon this theory, and this alone, that defendant claims that its peremptory instruction in the nature of a demurrer to the evidence should have been given.

So far as concerns defendant's negligence, it is undisputed that while defendant maintained gates or guards at this crossing as required by the ordinance, it did not at the time in question have a watchman in charge thereof to lower the same upon the approach of a train, as the ordinance required. That is to say, the defendant maintained such watchman only during certain hours of the day, and at the time of this accident, to-wit, between 8:30 and 9:00 o'clock p. m., no watchman was maintained at such place. And it is conceded that the gates were in fact not lowered, but were standing upright when plaintiff drove upon the tracks. From this defendant's negligence clearly appears, for the violation of the ordinance is negligence *per se*. And there was some testimony, negative in its character, having a tendency to make it appear that the bell was not kept ringing as the engine approached the crossing; though there is much positive testimony tending to contradict this.

The case turns, however, upon the question of whether plaintiff, under the circumstances, is to be declared guilty of contributory negligence as a matter of law, and denied a recovery on that account. In this connection it must be borne in mind that defendant's failure to maintain a watchman at this crossing at the time in question and to lower the gates upon the approach of a train thereto, as the ordinance required, was not only an act of negligence on the part of the defendant, but one which has a tendency to relieve the plaintiff from the charge of contributory negligence. While one driving upon the streets, under such circumstances, may not be entirely relieved of the duty to exercise care for his own safety, for the reason that railway tracks are in themselves a signal or warning of danger, nevertheless it is clear that his conduct in the premises is to be viewed in the light of the attendant circumstances.

The fact that the gates were maintained, and that they were open at this particular time, necessarily constituted an invitation to one to pass upon or over the defendant's tracks. It was essentially an assurance to plaintiff, driving upon the street, that no danger need be feared from an approaching train. While it may be true that she was not so far relieved of the duty to look and listen that she could go blindly and heedlessly upon the tracks, relying wholly upon the fact that the gates were not closed, nevertheless her duty to look and listen is to be regarded as modified, to a great extent at least, by the fact that the open gates constituted an invitation to go upon the tracks and an assurance of safety on so doing.

In Wack v. Railway Co., 175 Mo. App. 111, 157 S. W. l. c. 1072, 1073, this court, speaking through NORTONI, J., said:

"Moreover a pedestrian approaching a railroad crossing where gates and a watchman are to be kept under the requirements of law, has a right to assume

and rely, in a measure, on the fulfillment by the railroad company of the obligation so imposed upon it. Such gates and watchman are required by the ordinance to the end of giving warning to those in the street approaching the railroad. If the gates are lowered, the pedestrian understands danger is imminent from an approaching train; on the other hand, if the gates are open, he understands, through an implied invitation on the part of the railroad company to enter, that it is safe for passage across the tracks. [See Montgomery v. Mo. Pac. R. Co., 181 Mo. 477, 507, 79 S. W. 930.] The rule in regard to the duty of a person about to go upon a railroad track at a public crossing to look and listen for trains is modified, therefore, when the crossing is one usually guarded by such gates and a watchman so as to permit a pedestrian approaching the track to rely, in a measure, on the conditions of the gates when found open or the absence of other warning from the watchman. [Edwards v. Chicago & Alton R. Co., 94 Mo. App. 36, 33, 67, S. W. 550; McNamara v. Chicago, R. I., etc., R. Co., 126 Mo. App. 152, 103 S. W. 1093; Jennings v. St. Louis, I. M. etc., R. Co. 112 Mo. 268, 20 S. W. 490.]''.

The authorities cited in the opinion from which we have just quoted are cases involving the right of a plaintiff to rely upon the signals of a flagman at a crossing, and not the effect of leaving open gates which are required to be maintained and operated, but the principle involved is similar to that which obtains in the latter instance.

In 2 White, Personal Injuries on Railroad, Sec. 919, it is said: ''By the great weight of authority, it is held that where a railroad company provides gates, to shut the railroad track from public travel, when the track is in use, an open gate is an invitation to the traveling public to cross the track, in the absence of circumstances which would put the traveler on notice of the danger in so doing.''

With respect to one's duty to exercise care for his own safety, under such circumstances, the same author, section 921, says: "As a traveler at a highway crossing with a railroad track, is required only to exercise ordinary care, or such care as a reasonably prudent person would exercise under the same circumstances, the fact that the railroad company maintains a gateman to look after the safety of travelers on the highway crossing is a circumstance calculated to minimize the danger of the track, and hence, it is generally held, that where gates are maintained, as the danger is not so imminent, the traveler is not held to the same high degree of caution as if there were no gates at the crossing. The traveler is of course still held to the standard of ordinary caution, for his protection, but as the danger is less, the vigilance required would be proportionately less."

And again the same author, section 922, says: "It is held, in some cases, that an open gate is so far notice of a clear track and a safe crossing, that in the absence of circumstances imparting danger, it is not negligence in persons approaching crossings with teams to fail to stop, look and listen for a train, although the view of the track on either side of the crossing is obstructed. This rule, however, is not generally followed, for it loses sight of the general rule underlying the right of the plaintiff in all personal injury actions to recover damages for an injury, that to maintain his cause of action he must be personally free from negligence directly contributing to the injury and that the negligence of the defendant alone, if the plaintiff is so negligent, will not authorize a recovery."

Authorities are cited in support of the propositions of law thus asserted, which may be found by reference to the foot notes to the sections from which we have quoted above.

In 3 Elliott on Railroad, Sec. 1157, in treating of this subject it is said: "Where maintained, whether

required by statute or not, the fact that the gate is open is held to be an invitation to cross and an assurance that the track can be crossed in safety, but such an invitation will not excuse the traveler from himself exercising care to avoid a collision. It is the duty of the company to close the gates on the approach of a train, but the traveler must not rely entirely upon its servant to do so. In cases where the failure to close the gates is followed by a collision, *the questions of negligence and contributory negligence are usually for the injury.''* (Italics ours.)

The situation is quite different where the railroad company negligently fails to provide and maintain gates, as required by statute or municipal ordinances, for then the traveler upon the highway is not thrown off his guard and led, as it were, into danger. But where such gates or guards are in fact maintained, the traveler who has no notice that a watchman is not kept in charge thereof during certain hours of the day, is, by the fact that such gates are permitted to remain open, impliedly invited to cross the tracks and lulled into a sense of security and safety in attempting so to do, and thereby induced to fail to exercise that vigilance and watchfulness which he might otherwise observe.

On this question, Palmer et al. v. Railroad Co., 112 N. Y. 234, is a strong case. There the plaintiff, traveling in a covered buggy, was struck by defendant's train at a crossing which had for many years been provided with gates. The flagman in charge of the latter was absent at the time, and the gates were not lowered. In discussing the question whether plaintiff should have been declared guilty of negligence as a matter of law, the court, (l. c. 244, 245) said: ''I do not think the court can say as matter of law, that the statutes which require signals and precautions can be disregarded by the defendant, and it be allowed to claim that the traveler should not be influenced by these omissions. While the court could not as matter of law, say that the

plaintiff did not look, *neither would that fact, if found, enable it to say as matter of law that negligence on his part was established. . . .* Negligence cannot be presumed; and where by the act of the defendant a person has reason to believe that he may cross the track in safety, his attempt to do so and his lack of that vigilance which under other circumstances might be required, cannot be regarded as constituting negligence. He is still bound to exercise ordinary and reasonable care, but the measure of his duty varies with the peculiar circumstances of the case, *and its fulfillment must be determined by the jury.*" (Italics ours.)

And in this same connection see Oldenburg v. Railroad, 124 N. Y. 414; Glushing v. Sharp, Receiver, 96 N. Y. 676; Delaware, etc., Co. v. Larnard, 161 Fed. 520; Central Trust Co., et al. v. Ry. Co., 27 Fed. 159; Lakeshore etc., Ry. Co. v. Franz, 127 Pa. St. 297; Stapley, et al., executors, etc. v. Railway Co., 4 H. C. 93; Bilbee v. Ry. Co., 18 Comp. B. 583; Lunt v. Railway, 1 Q. B. 277.

It is unnecessary, however, for the purpose of this case, to declare the rule broadly to the effect that plaintiff may not, in any case, be declared guilty of contributory negligence as a matter of law in failing to look or listen, when passing over railroad tracks at a public crossing where gates are maintained, because of the invitation implied by reason of such gates being open and the assurance of safety thereby given. But in the case before us, the fact that the gates were open necessarily had the effect of qualifying the duty devolving upon the plaintiff to take precautions for her own safety. She testified that she had had years of experience in driving over this very crossing; that she had always observed the gates, and had always found them lowered when a train was approaching; and that, at the time here in question, she relied upon the protection thus supposed to be afforded her. Her further

testimony, as we have seen above, is to the effect that she did look and listen before passing upon the tracks. It is contended that this is so far refuted by the physical facts that it should be entitled to no consideration whatsoever. We cannot say that this is true, however, for the case is not like one where a plaintiff declares that he looked for but did not see an approaching train, in broad daylight, when his view was unobstructed and when it was in fact almost upon him. It here appears that the train was approaching quite slowly, with steam shut off, about to come to a stop. Plaintiff, it seems, approached the track along the east side of the street car which was standing just north of the crossing, and which then obscured her view to the west. It is said that the night was dark and foggy; and while plaintiff's view was not obstructed after passing the south or forward end of the street car above mentioned, we could not well say, as a conclusion of law, that she did not look to the west (when she says that she did), because she did not see the headlight. The latter, it is claimed, cast a bright light, which illuminated the crossing and the region thereabout; but it appears that two street cars were standing at this crossing which was adjacent to defendant's station, and though little affirmatively appears in the record as to other lights at this point at the particular time, it does appear that the street car which had stopped immediately north of the crossing had a headlight burning, the light from which was necessarily cast upon the crossing, and particularly to the west of plaintiff as she crossed the tracks, whatever may have been the case as to the other street car which stood nearly facing her. It is proper to reckon with this factor in the case, as affording perhaps a reason why one, though looking, might fail to observe the headlight of the approaching train, or the light which it cast ahead, at least to the extent that plaintiff's testimony that she did look to the west and did not see the headlight of the engine

may not be said to be so utterly opposed to the physical facts as to warrant its rejection as being wholly beyond belief. Unless we can properly so reject this testimony of plaintiff, it was a matter for the jury to reckon with and to believe or disbelieve. And it would seem that we could not well pass judgment thereupon, as a conclusion of law, in view of the surrounding circumstances above mentioned, coupled with the fact that plaintiff, because of defendant's implied invitation and assurance of safety, cannot be held to that degree of vigilance in looking for an approaching train which might otherwise be required of her.

Some stress is also laid upon the fact that the street cars had stopped and were standing at this point to await the passing of the train, and which plaintiff might well have observed. As to this, however, plaintiff says that she had repeatedly observed the fact that the street cars came to a stop before this crossing, whether a train was approaching or not. It would thus appear that the fact that such cars had thus stopped just at the time that plaintiff was driving upon the track is a matter of no moment so far as concerns the ruling upon the demurrer.

In view of the fact that plaintiff's duty to take precautions under the circumstances was modified by the fact that the gates were open, whereby she was impliedly invited to come upon the tracks, and assured of safety in so doing, upon which she says that she relied, and considering her affirmative testimony to the effect that she did look and listen, taken together with the surrounding circumstances, we think that we could not say, as a conclusion of law, that she was guilty of contributory negligence. She testified that she did not know that the gates were not operated after seven o'clock in the evening, and nothing appeared to contradict this. If it had been shown that she knew of defendant's custom in this regard, this phase of the

case would be quite different from that here presented. [See Rainey v. Railroad, 23 N. Y. Supp. 80.]

We have been referred by learned counsel for appellant to numerous cases wherein one has been held guilty of negligence as a matter of law in failing to look and listen before attempting to cross railroad tracks; and to many such cases which are also to the effect that where to look is to see—e. g., given broad daylight and no obstructions—one will not be heard to say that he did look but did not see an oncoming train, in the face of the physical facts. But we think that such authorities are not decisive of the matter in hand, for the reasons which we have attempted to set forth above.

We are of the opinion that the trial court committed no error in overruling the demurrer to the evidence.

There are other assignments of error which we deem not of sufficient importance to warrant an extension of the opinion in order to discuss them. They do not in fact appear to be seriously urged in appellant's brief, its argument being confined to the court's ruling on the demurrer. We have, nevertheless, carefully examined them, and are convinced that no prejudicial error intervened because of the matters thus complained of. No point is made as to the amount of the verdict. The judgment should therefore be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.

## ON MOTION FOR REHEARING.

ALLEN, J.—It is earnestly insisted by learned and diligent counsel for the appellant that the foregoing opinion herein is in conflict with the rulings of our Supreme Court in Kelsay v. Railroad, 129 Mo. 365, 30 S. W. 339; Stotler v. Railroad, 204 Mo. 619, 103 S. W. 1; Laun v. Railroad, 216 Mo. 563, 116 S. W. 553, and other cases of like tenor. It is said that plaintiff had

no right to rely altogether upon the defendant to observe the provisions of the ordinance in question, and fail to exercise reasonable care for her own safety; and that, since railway tracks are an ever present signal of danger, she was required to exercise her faculties to discover an approaching train, regardless of the invitation implied by reason of the gates being open.

As to this we may say that we have not held that one is wholly relieved from the duty to use his own sense of sight and hearing, under such circumstances; nor that one under circumstances as here appear may recover if he drives upon a railway track in a closed vehicle so that he cannot see and makes no effort whatsoever to see an approaching train, nor listens for the same. In other words we do not say that defendant's violation of the ordinance, in failing to lower the gates upon the approach of the train, and the invitation thereby implied, would alone relieve a plaintiff of the consequences of his own negligence, when such negligence so clearly and palpably appears that there could be no room for reasonable minds to differ with respect thereto. Here, if plaintiff was seated within the covered wagon, where she could not see, and made not the slightest effort to ascertain whether or not a train was approaching, we do not say that she could recover. Such was the tenor of some of the testimony on behalf of defendant, but other testimony on behalf of plaintiff made it appear that she was seated upon the front seat of the wagon, and that she did look before entering upon the tracks. Under the circumstances, we think that that question became one for the jury, and we do not see how we could pass judgment thereupon as a matter of law.

In this connection it is urged that the court is not bound by testimony demonstrated to be false by all of the other facts in the case, or so utterly opposed to the physical facts appearing as to be utterly unworthy of belief. [See Sexton v. Railroad, 245 Mo. 254, 149 S. W.

21.]   This is an old and familiar rule of law, frequently announced by our Supreme Court.   But we feel that we cannot say that all testimony adduced in plaintiff's behalf tending to show that she looked should be utterly rejected upon this ground.  · It is true that it may seem reasonable to suppose that plaintiff, under ordinary circumstances, would have seen the headlight of the approaching train had she looked; but, as we have said, there was apparently the glare of other headlights about the crossing, and the night dark and foggy, making the situation different from one where a traveler approached a railroad track in broad daylight with his view unobstructed, and where it may be said peradventure that to look is to see.

Our Supreme Court has frequently held that where there is flagrant violation of a law or municipal regulation, resulting in an injury, contributory negligence should be clearly made out, before the court may relieve the defendant from liability on that ground. [See Bluedorn v. Railway Co., 108 Mo. l. c. 449, 18 S. W. 1103, 121 Mo. l. c. 268, 25 S. W. 943; Petty v. Railroad, 88 Mo. 306; Baker v. Railroad, 147 Mo. l. c. 166, 48 S. W. 838; Jennings v. Railroad, supra.] We do not understand that the Supreme Court has departed from the doctrine above mentioned.   On the contrary, in the recent case of Lueders v. Railroad, 253 Mo. 166, 161 S. W. 1159, it is said:

"As the defendant had the right in the lawful use of its franchise to assume, in the absence of any appearances to the contrary, that its signals to insure the safety of the public would be heard and obeyed, so the plaintiff has the right, in the lawful use of the street, to assume that all those things which the law required for his protection would be faithfully observed.   It would be a travesty to require that the defendant move its trains at a speed of five miles per hour through the city, for the protection of the public using its streets,

and refusing the people any advantage from such protection, but compel them to act as if no such protection existed; to be in a constant state of *qui vive* expecting the law to be violated.''

Here we think that plaintiff's conduct must be viewed in the light of the fact that defendant had impliedly invited her to come upon the tracks; not that she was thereby wholly relieved of the duty to exercise care for her own safety, but that the standard of ordinary care under such circumstances is by no means the same as in cases where such implied invitation is not present; and furthermore that her contributory negligence must be very clearly made out before a court is justified in refusing to submit the question to the jury.

Our attention is also directed to that portion of the opinion which refers to the street car which was said to have been standing north of the railroad tracks, and which it is said obstructed plaintiff's view to the west. It is pointed out that plaintiff testified that she did not see either of the street cars that stopped at this crossing; and it is urged that the fact that she said that she did not see these cars, which were undoubtedly there, shows that she did not look at all before going upon the tracks. It is true that plaintiff did so testify, but she says that she saw many cars passing that place that evening. After she had said that street cars were not standing at this crossing, she was asked whether she was as certain as to that as she was as to the other facts to which she had testified. And she said: ''I am not as certain about street cars, because I see so many street cars, and I see them always stop at Broadway.'' The fact that she did not recall that the street cars had stopped at the crossing we think would not justify us in saying that she did not look at all. Her testimony in this respect is not necessarily inconsistent with that to the effect that she looked for the train; for she may have paid no attention to street cars, with

which she was then not concerned, though she may have looked for the train. We are of the opinion that the evidence was such as to make that question one for the jury, and that it is not within our province to pass judgment thereupon as a matter of law.

The motion for rehearing will therefore be overruled; *Nortoni, J.,* concurring therein. *Reynolds, P. J.,* dissents in an opinion filed, withdrawing his former concurrence; and as he deems the decision contrary to the previous decisions of the Supreme Court in Stotler v. Railroad, 204 Mo. 619, 103 S. W. 1; Laun v. Railway Co., 216 Mo. 563, 116 S. W. 553, as well as to other decisions of that court, he asks that the cause be certified to the Supreme Court, which is accordingly done.

## DISSENTING OPINION.

REYNOLDS, P. J.—On reconsideration, I have concluded that we should not affirm the judgment in this case. While the absence of the lowered gate was gross negligence on the part of defendant, I do not think its absence relieved plaintiff from all caution; absolved her from her duty to see that she could safely cross, so that she could go blindly and heedlessly upon the tracks, relying wholly upon the fact that the gates were not closed; nor do I understand the opinion to so hold; on the contrary, it holds that there was evidence from which the jury could find that she did exercise reasonable caution. That is all required of her, absent the lowered gate. That is, all the effect that the absence of the lowered gate may have had was to relieve plaintiff from the exercise of the same amount of caution she should and would have exercised. This goes to the degree of caution only, not to its entire absence. It is an old rule that the negligence of a defendant does not excuse negligence of the plaintiff. So I understand Mr. White (2 White Personal Injuries on Railroad, sec. 919, and following, especially

section 922) to conclude, on consideration of the authorities.    Where I depart from my learned brethren, on reconsideration, is on the facts in evidence being sufficient to warrant the jury to find plaintiff did exercise reasonable caution.    She was driving along the street, approaching a well-known railroad crossing. The night was dark; the train, coming along at the rate of four miles an hour, was drawn by a locomotive equipped with an electric headlight, throwing a brilliant gleam for a long distance ahead.    Even a casual observer must have seen this light, granting no whistle, bell, or noise of the approaching train was heard. Plaintiff says she saw no light from the locomotive. Every other witness near by saw it.    It will not do to say that plaintiff mistook the light from the locomotive for the lights of the street cars.    These two street cars were stopped, one on each side of the railroad tracks, each lit up, each displaying headlights, both stopped. Plaintiff at first testified that she saw neither; she later qualified this by saying that she saw so many street cars that she did not recollect as to these.    How is it possible for her, if she looked, was on her guard, in approaching this crossing, not to have seen these cars, their lights and the light from the locomotive? She had to pass one of the cars to get on to the tracks. The halted cars were in themselves a cautionary sign. That she did not now recollect seeing the cars, does not amount to anything.    But whether she saw the cars or recollects about them or not, there is no question but that they were halted there and that the light cast by the slowly on-coming locomotive was there.    These were all visible warnings, which, if plaintiff was in the exercise of any care or watchfulness for her own safety in approaching the railroad tracks and when attempting to cross, she should have heeded.

I cannot escape the conviction that the evidence shows affirmatively such negligence on the part of the

plaintiff as bars her from recovery; that her testimony is not borne out by known facts.

Deeming the opinion in the case, both as first handed down and as set out in the careful opinion overruling the motion for rehearing, contrary to the decisions of our Supreme Court in Stotler v. Chicago & Alton Ry. Co., 204 Mo. 619, 103 S. W. 1, and Laun v. St. Louis & S. F. R. Co., 216 Mo. 563, 116 S. W. 553, and like cases cited by counsel, I respectfully ask that the case be certified to the Supreme Court.