J. M. SWIGART, Appellant, v. JAMES W. LUSK, W. C. NIXON and W. B. BIDDLE, Receivers of the ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Respondents.

Springfield Court of Appeals, June 23, 1917.

1. **RAILROADS: Crossings: Signals: Statutory and Otherwise: Effect.** Where a railroad maintains a danger signal at a crossing, whether required by statute or not, the fact that the signal is absent is an invitation to cross and an assurance that the track can be crossed safely. But a traveler is not excused thereby from himself exercising care to avoid a collision. And absence of a danger signal does not excuse a traveler from failure to exercise care whether or not there has usually been a danger signal at a crossing.

2. ———: ———: ———. Where a railroad is guilty of negligence in failure to give statutory warning on approaching a crossing which results in injury to a traveler, the question of a failure to ring a gong customarily rung at such crossing being a ground of its negligence is not material and bears on the question of the traveler's contributory negligence only.

3. **NEGLIGENCE: Negligence Per Se: Established Custom or Ordinance or Statute Violated.** The breach of an established custom as well as an ordinance or statutory regulation or requirement as to signals at crossings is negligence *per se on* the part of the one committing the breach and the knowledge of such custom or ordinance or reliance on same became important only when such custom or ordinance is invoked to excuse the conduct otherwise negligent of a traveler seeking to recover for such negligence.

4. ———: **Viewpoint of Determining.** Negligence, contributory or otherwise, is determined from the viewpoint of the actor.

5. **PLEADING: Negligence: What Sufficient.** In pleading it is generally sufficient to plead the duty imposed by law or custom and its breach with resultant injury.

6. ————: ————: **Contributory Negligence: Contributory Negligence is a Defense.** While a plaintiff may anticipate the defense of contributory negligence and placed the facts which rebut or excuse same, where negligence, contributory or otherwise is charged it is generally sufficient for the other party to deny same. One may prove without pleading the particular facts which rebut or excuse negligence.

7. **RAILROADS: Crossing Injuries: Failure to Give Statutory Signals.** Action by one who was driving an automobile and who was injured by collision with a train of defendant at a street railroad crossing. The pleading and proof of plaintiff showed that defendant failed to give the signals required by statute of train's approach and that the injury occurred as a result thereof. This entitled plaintiff to recover unless the evidence showed contributory negligence on his part so clearly that reasonable minds could draw no other reasonable conclusion. .

8. **APPELLATE PRACTICE: Reviewing Demurrer to Evidence: Facts Considered as True.** Where a demurrer to plaintiff's evidence was sustained by the trial court, the appellate court in reviewing such action will consider as true the facts testified to by the plaintiff, unless such facts are impossible or contrary to physical facts.

9. **RAILROADS: Crossing Collision: Review of Evidence.** Action by an automobile driver against a railroad for injuries occasioned by collision with a train at defendant's crossing. Conditions considered and evidence reviewed. Evidence deemed sufficient to warrant jury in finding that plaintiff exercised ordinary care in looking and listening for the train and that he used ordinary care to avert the threatened danger after its discovery.

10. **NEGLIGENCE: Avoiding Danger: Impractical Thing Not Required.** One acting under the excitement of impending danger is not required, by the law, to do at his peril the thing which afterwards appears to have been the safest. Especially is this so where defendant has, by its neglect of duty and failure to give timely warning, lulled plaintiff into a feeling of security and brought him into peril.

11. **RAILROADS: Crossing Tracks: Rule Concerning.** It is always a person's duty to look and listen when possible before entering on a railroad crossing. Stopping is necessary when it is essential to make looking and listening effectual.

12. ————: ————: **What Acts Not Negligent as Matter of Law.** Action against railroad on account of injuries occasioned by a collision between plaintiff's automobile and defendant's train at city street crossing. The evidence showed that plaintiff approached the cross-

ing attentively listening for the signals of approaching trains re-
quired by statute and for the ringing of the gong maintained by
defendant at such crossing but did not hear any signals. His act
in approaching the crossing at six or eight miles per hour cannot
be declared negligence as a matter law.

13. ———: Crossing: Looking, Listening: Slowing Down and Stopping.
A traveler approaching a railroad crossing is required to look or
listen or both, when practicable, for an approaching train. He is
also required to slow down or stop when necessary to make looking
or listening effectual.

Appeal from Jasper County Circuit Court, Division
Number Two.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED.

*Grant Emerson* and *Walden* N *Andrews* for appel-
lant.

*W. F. Evans, Spencer & Grayston* and *Mann, Todd
& Mann* for respondents.

STURGIS, J.—The plaintiff sues for personal in-
juries received in a collision with defendant's passenger
train while attempting to cross defendant's railroad in
an automobile at a grade crossing in the city of Joplin.
Plaintiff, when injured, was traveling east on Eight
Street, which crosses defendant's tracks running north-
west and southeast. The court sustained a demurrer to
plaintiff's evidence on the ground of his being guilty of
contributory negligence as a matter of law and the cor-
rectness of this ruling is the sole question before us.

The train was approaching from the southeast and
crossed Eight Street at an angle, though the photo-
graphs in evidence indicate that the crossing is nearly
at right angles. The negligence alleged is the failure of
defendant to give the statutory signals on approaching
this crossing, coupled with an allegation that defendant
had, for a long time, maintained an automatic electric
signal bell at the crossing in question to warn travelers
of an approaching train, which was allowed to become
defective and failed to ring on this occasion. It is also

alleged that the view of one approaching this crossing from the west is so obstructed by houses and other improvements that travelers coming from the west on Eight Street cannot see a train approching from the southeast till very close to the crossing. For the purpose of this suit it must be conceded that the maintenance of this automatic bell at the crossing was purely voluntary on defendant's part, since there is no allegation of any such duty imposed by law, State or municipal. It is shown, however, that this bell had been maintained at this crossing for more than a year; that plaintiff had frequently passed over the crossing and knew such fact; that wh'le other witnesses said this bell had failed to ring at other times when trains were approaching, plaintiff testified that he had never known it to fail.

The law in regard to warning signals at much used street crossings is stated in 3 Elliott on Railroads, sec. 1157, thus: "Where maintained, whether required by statute or not, the fact that the gate is open is held to be an invitation to cross and an assurance that the track can be crossed in safety, but such an invitation will not excuse the traveler from himself exercising care to avoid a collision. It is the duty of the company to close the gates on the approach of a train, but the traveler must not rely entirely upon its servant to do so . . . . Although not originally under obligation to do so, if the company has maintained a flagman at a particular crossing for a long time and his presence is notorious, travelers have, within limits, a right to assume, when he is absent, that no train is approaching and his absence or permanent removal, without notice to the public, is evidence of negl'gence, but where, not knowing that a flagman had usually been stationed at the crossing, the traveler's conduct was in no way influenced by his absence, such absence creates no liability, nor does the absence of a flagman in any event absolve the traveler from the exercise of care." The law as here stated is abundantly recognized in this state. Montgomery v. Railroad, 181 Mo. 477, 500, 503, 79 S. W.

930, quotes the rule just stated by Elliott and adds: ''If on the other hand the flagman was not there, as plaintiff's evidence strongly tends to prove, and the custom of keeping him there was known to plaintiff, the plaintiff might well have concluded that no trains were expected at that time, and such absence was a potent fact in considering her conduct in proceeding over the crossing . . . . The action of the defendant in maintaining a flagman at this public and much-used crossing was most commendable and after the public had become accustomed to seeing the flagman there and advised of his duties, it cannot comp'ain that travelers lawfully using the crossing regulated their conduct upon the implied assurance that the flagman would be there when trains were passing or approaching and finding no one when they came to the crossing would presume no train was near. To assume otherwise would be against all ordinary human experience.'' To the same effect is Yonkers v. Railroad, 182 Mo. App. 571, 168 S. W. 307.

It may be granted, but we do not so decide, that, in order to count on the failure of defendant to give warning signals at a crossing which are not required by law as an affirmative ground of defendant's negligence, it must be alleged, as well as proved, that same have been given for such length of time and with such uniformity that the giving of same amounts to a custom and that such custom is known to and relied on by the person alleging the breach. It is claimed by defendant that plaintiff's petition is faulty in not alleging that plaintiff know of the long maintenance of this electric alarm and relied on same giving him warning on this occasion of an approaching train. These cases are cited: Percell v. Railway, 126 Mo. App. 43, 53, 103 S. W. 115; Voelker Products Co. v. United Railways, 185 Mo. App. 310, 316, 170 S. W. 332; Paul v. United Railways, 152 Mo. App. 577, 587, 134 S. W. 3; Schumacher v. Breweries Co., 247 Mo. 141, 160, 152 S. W. 13. It will be found that none of these cases except the first one named supports this rule of pleading. But the question as to the failure of the electric gong to give the customary warn-

ing on this particular occasion being such negligence on defendant's part as would warrant plaintiff's recovery on that ground is of no importance in determining whether the demurrer to the evidence should be sustained. It is both alleged and proven that the defendant failed to give the statutory warning of ringing the bell or sounding the whistle at intervals as the train approached the crossing where the collision occurred. The cases holding that a failure in this respect is negligence *per se* are innumerable and that, too without any showing that the plaintiff knew of and relied on a compliance with this statutory provision, as might not be true of one who recently came from another State. So too, for that matter, there are many cases holding that a violation of a city ordinance regulating speed or requiring certain signals establishes negligence *per se* without reference to plaintiff's knowledge of or reliance on the same. [Hamm v. United Railways, 184 Mo. App. 5, 12, 167 S. W. 1070; Dey v. United Railways, 140 Mo. App. 461, 120 S. W. 134; Yonkers v. Railroad, 182 Mo. App. 558, 562, 168 S. W. 307.] It may well be questioned whether plaintiff's knowledge of and reliance on such ordinance regulations does not, in all cases, merely affect the question of his contributory negligence rather than absolve the defendant from negligence. The breach of an established custom as well as of an ordinance or statutory regulation or requirement is negligence *per se* on the part of the one committing the breach and the knowledge of such custom or ordinance and reliance on same becomes important only when such custom or ordinance is invoked to excuse the conduct, otherwise negligent, of one seeking to recover for such negligence. This is true because negligence, contributory or otherwise, is determined from the view point of the actor. In pleading it is generally sufficient to plead the duty imposed by law or custom and its breach with resultant injury. Contributory negligence is a defense. A plaintiff may, as did plaintiff here, anticipate the defense of contributory negligence and plead the facts which rebut or excuse the same. It is generally suffi-

cient, however. when negligence, contributory or other-wise, is charged for the other party to simply deny the same and one may prove without pleading the particular facts which rebut or excuse negligence.

In the present case the plaintiff plead and proved defendant's negligence in failing to give the statutory signals and his consequent injury. He is therefore entitled to recover, Weigman v. Railroad, 223 Mo. 699, 721, 123 S. W. 38, unless the evidence shows his contributory negligence so clearly that reasonable minds can draw no other reasonable conclusion. [Yonkers v. Railroad, 182 Mo. App. 558, 577, 168 S. W. 307.] We need, therefore, only consider the failure of the electric gong to give the customary warning along with the other facts, such as the obstruction to sight and hearing, as bearing on the question of plaintiff's contributory negligence.

The facts stated favorably to plaintiff, mostly drawn from his own evidence, are that he was going east on Eight Street in his Ford automobile at a speed of ten to twelve miles per hour. He was acquainted with the surroundings at this crossing and when he reached the intersection of Jackson Avenue, a north and south street, and being then some seventy-five feet from the crossing in question, he slowed down to eight miles per hour, or as he later stated, six to eight miles. There was a house on the fifty foot lot between Jackson Avenue and defendant's right of way which faced north and covered nearly the entire front of this lot. Oother houses were to the rear of this one. This obstructed plaintiff's view of defendant's track to the south and southeast. As plaintiff approached defendant's track he says he listened and heard no signals or sound of a coming train and noted that the crossing gong was not ringing. This induced him to believe that no train was approaching and he proceeded at that speed. He says that he, nevertheless, looked to the left or north and saw that no train was coming from that direction and, as soon as he passed the house on his right, he looked down the track southeast and saw the fast coming train then near the alley in the

middle of the block, 150 or 160 feet distant. Plaintiff was then twenty to twenty-five feet from the track. That he looked down the track as soon as he could is shown by the fact that he saw the train by looking between the house and a tree and post only four or five feet from the house. Plaintiff says that he then shut off the power, applied the foot brake and lowered his speed in going the next ten or fifteen feet to about five miles per hour; that he was much excited and, fearing that he would stop on or too near the track or run into the train, he then put his car in low speed and undertook to cross in front of the coming engine, which he nearly succeeded in doing. He thinks he was within five to eight feet of the west rail when he changed his car to low gear and tried to cross in front of the engine. He says that he was excited and did not know what to do; that he was afraid he would not stop in time and concluded to try to cross. Plaintiff further testified that under ordinary circumstances, that is when no train was coming and he was not excited and knew just what to do and when to do it, he could stop his car in ten to fifteen feet when going at six to eight miles per hour. Another witness thought it could be stopped in about eight feet. Plaintiff did not attempt to use the emergency brake and says he did not usually use that one in stopping and is not sure that it would stop any quicker. The train was running thirty-five miles per hour, as stated by a witness, and this is corroborated by the fact that the engine ran some five or six hundred feet beyond the point of collision before stopping.

From all this we may reasonably draw the inference that plaintiff, though he looked down the track for a train as soon as he passed the obstruction, yet, because of the absence of both the train signals and the ringing of the crossing gong, he did not in fact expect to see a train, at least so very close; that in his excitement he did not act instantly. It takes time to receive impressions and act on them. [Burge v. Railroad, 244 Mo. 76, 101, 148 S. W. 925; McGee v. Railroad, 214 Mo. 530, 543, 114 S. W. 33.] One cannot control or stop an auto-

mobile as quickly and accurately as he can control his person in walking. [Hamm v. United Railways, 184 Mo. App. 5, 12, 167 S. W. 1070.] The front of the automobile was some five feet further forward than the plaintiff and, if it took plaintiff a single second to act after he caught the first impression of the train, the front of the automobile was then within fifteen feet of the track. If he went, say, eight feet further in trying to stop and had not yet stopped, might he not conclude that he had best try to get clear across? Whatever he did at this time was an impulse rather than any intelligent action.

We are bound to take these facts as testified to by plaintiff as true unless same are impossible or contrary to the physical facts. We will grant that plaintiff had no right to blindly rely on the absence of signals as showing a clear track [Yonkers v. Railroad, 182 Mo. App. 558, 576 (and 579 dissenting opinion) 168 S. W. 307; 3 Elliott on Railroads, secs. 1157, 1165]; but must nevertheless use his eyes and ears to discover a train before passing onto the track. [Edwards v. Railroad, 94 Mo. App. 36, 44, 67 S. W. 950; Hamm v. Railroad, 184 Mo. App. 5, 12, 167 S. W. 1070; Blaine v. Railroad, 184 S. W. 1142; Schmidt v. Railroad, 191 Mo. 215, 90 S. W. 136; Blount v. Railroad, 61 Fed. 375; Jacobs v. Railroad (Kans.), 154 Pac. 1025; Headley v. Railroad (Colo.), 154 Pac. 731; McSweeney v. Railroad, 87 N. Y. S. 836.] Plaintiff says that he did all this; that he did not hear any train because the accustomed and required signals were silent; that he did see the train practically as soon as he could; that he then did the best he could under the stress of the impending peril. We see no reason for rejecting as impossible or contrary to the physical facts plaintiff's statement that he saw the train practically as soon as it was visible and was then only twenty to twenty-five feet from the track. Defendant's photograph shows a vision of thirty-eight feet but does not refute the charge then made that it was taken from the north side of Eighth Street where the zone of vision would be wider than on the south side where plaintiff was traveling. Plaintiff's photo-

graphs corroborate his statement. It is suggested that if plaintiff had slowed down his speed to six or eight miles per hour (plaintiff gave his best impression as being eight miles per hour), and then went ten to fifteen feet with the brake on, the speed would be lowered to less than five miles per hour. But these distances and speeds are merely plaintiff's best impressions formed under great excitement and peril. The jury would have a right to vary such speeds and distances two or three miles per hour or three or four feet respectively. The real question is, could the jury consistently find that plaintiff did exercise ordinary care in looking and listening for a train and, if so, that he did then use ordinary care to avert the threatened danger. we think it could.

It is probable that had plaintiff not changed his mind about stopping he could have done so before he reached the track, but we do not understand defendant to controvert the fact that he was then acting under excitement and peril and that the law does not require one under such circumstances to do, at his peril, the thing which afterwards appears to have been the safest. [Kleiber v. Railroad, 107 Mo. 240, 247, 17 S. W. 946; Wack v. Railroad, 175 Mo. App. 111, 125, 157 S. W. 1070; Weigman v. Railroad, 223 Mo. 699, 720, 123 S. W. 38; Hanna v. Railroad, 178 Mo. App. 281, 286, 165 S. W. 1148; Donohue v. Railroad, 91 Mo. 357, 364, 2 S. W. 424, 3 S. W. 848; Underwood v. Railroad, 190 Mo. App. 407, 418, 177 S. W. 724.] This principle is especially applicable where defendant has, by its neglect of duty and failure to give timely warning, lulled plaintiff into a sense of security and brought him unawares into the peril from which he seeks to extricate himself. [Edward v. Railroad, 94 Mo. App. 36, 45, 67 S. W. 950; Baker v. Railroad, 147 Mo. 140, 166, 48 S. W. 838; International & G. N. Railway v. Isaacs (Texas), 168 S. W. 872; Dickenson v. Railroad, 81 Atl. 104, 37 L. R. A. N. S. 150.]

It must also be kept in mind that from the time plaintiff first saw the train, being then only twenty to twenty-five feet from the crossing and the train only

150 to 180 feet therefrom, only three or four seconds elapsed till the collision. This is a very short time within which to act, especially in excitement, and what has been said in favor of railroad engineers and other trainmen, in not requiring them to act instantly and with absolute precision and accuracy in averting a suddenly discovered peril, is equally applicable to the driver of an automobile and we refer, without repeating same, to what we said in Underwood v. Railroad, 182 Mo. App. 252, 168 S. W. 803, and the cases there quoted from. We think it clear that a court should not say as a matter of law that plaintiff was guilty of negligence in failing to use due care in discovering the coming train or in trying to avert a collision after its discovery.

The only other point is whether plaintiff was negligent in not bringing his car to such a low speed and having it under such control that he could have stopped same after discovering the train, regardless of the short distance between the point of discovery and the track, conceding, of course, that plaintiff knew the shortness of this distance. This at once recalls the proposition that plaintiffs hearing was unobstructed and that the train was not giving the dequired signals nor was the automatic crossing gong being sounded. Had no warning signals been expected by plaintiff or had he been deaf, then knowing that his sight was obstructed and that listening would do no good, the law might well have required him to observe the degree of caution and care just stated. We deny, however, that the same rule applies when plaintiff's hearing is not obstructed and defendant, by law and its own established custom known to and relied on by plaintiff, was required to give signals easily heard. The law relating to slowing down and putting one's means of locomotion in absolute control is analogous to that relating to stopping, for such slowing down is a partial stopping. The law does not require stopping when listening would be effectual on the supposition that defendant was doing its duty with reference to giving signals. We are not, of course, here speaking of such a high rate of speed as, under the

circumstances, itself bespeaks negligence, for such speed should always be lowered. Looking and listening are so easily and readily accomplished that a failure to do so in entering upon a place of danger, such as a railroad track, is negligence, even when the absence of signals indicates a safe crossing. But stopping is not held essential unless both seeing and hearing are ineffectual without so doing. [Underwood v. Railroad, 182 Mo. App. 252, 262, 168 S. W. 803; Underwood v. Railroad, 190 Mo. App. 407, 415, 177 S. W. 724; Kelley v. Railroad, 88 Mo. 534, 547; Masters v. Railroad, 58 Mo. App. 572, 575, Campbell v. Railroad, 175 Mo. 161, 183, 75 S. W. 86.] In the Kelley case, supra, the court said: "We think it (the law), requires of him, where he cannot see the track, to listen and *if necessary for that purpose,* on account of the noise made by his wagon (or any other cause) to stop and listen for the train before venturing blindly upon it." In the Underwood case, supra, we reviewed the authorities and announced the rule that: "It is always a person's duty to look and listen when possible before entering on a railroad crossing. When stopping is *essential* to make looking and listening effectual, then stopping is necessary." Such, we think, is the rule with reference to so slackening the speed and placing the means of locomotion under absolute control when one is already traveling in an ordinarily slow and safe manner. [Moore v. Railroad, 157 Mo. App. 53, 66, 137 S. W. 5; Elliott v. Railroad, 105 Mo. App. 523, 532, 80 S. W. 270.] If, as is often asserted, the vigilance and caution required in approaching danger must be proportionate to the apparent danger, it follows that one may relax his vigilance and caution when all the signs or lack of signals indicate no danger. As said in Kenny v. Railroad, 105 Mo. 270, 15 S. W. 938, where the facts were similar except that only the statutory signals were omitted, "he was under no legal obligation to shape his action on the theory that defendant would disregard the plain requirements of law respecting a signal of its coming train." In the recent case of Jackson v. Railroad, 189 S. W. 381, the facts showed that the plaintiff,

traveling on a motorcycle, approached a crossing with which he was familiar where his view was obstructed till within thirty to fifty feet of the crossing. His hearing not being obstructed he slowed down and listened and looked as soon as he could, but did not slow down and put his motorcycle under control to the extent that he could stop after the car became visible. That court held that he was not guilty of contributory negligence as a matter of law, and said: ''It is clear that this warning would be of little utility unless the traveler for whose benefit it is designed is permitted to profit by it. If, in very case which the traveler upon a public highway approaches a railroad crossing and can hear no warning because no train is approaching, he must act in all respects as if there were no law requiring such notice, that law must be a dead letter to him. Should he hear the train he must stop and let it pass. Should he not hear it he must still assume it is there, coming stealthily like a criminal to take his life. This is, of course, not the law; but the statutory duty is, in every such case, an element of the situation in determing the question of negligence between the parties to an accident of this character. It is true that the law requires the traveler to anticipate that the company may fail to give the statutory signals, and to act upon that theory; just as it requires the railroad company to anticipate that the traveler will fail to hear or disregard the signal when given, and to keep reasonable watch for such instances, and be prepared to protect those guilty of such carelessness. These duties are *equal* and *reciprocal,* and extend no further than does the humane principal in which they have their origin, for the law is no respector of persons. While the duty of watchfulness on the part of the railway does not include the duty to *stop or moderate the speed of its train* until danger appears, and thereby injure the public service in anticipation of a possible wrong, so the *same* benign principle is applied to the *traveler* who, while in duty bound to be watchful and cautious, is not under obligation until the necessity appears, to sur-

render to a possible wrongdoer all the benefits which the law is intended to confer." To the same effect is the Underwood Case, 190 Mo. App. 401, 416, 177 S. W. 724. Burnett v. Railroad, 172 Mo. App. 51, 59, 154 S. W. 1155, quotes from Virginia case that: "He must not approach the track at such a rate of speed that when he reaches the point where he can see or *hear* the train itself, it is too late to protect himself from injury." Yonkers v. Railroad, 182 Mo. App. 558, 568, 168 S. W. 307 says: "The fact that the gates were maintained, and that they were open at this particular time, necessarily constituted an invitation to one to pass upon or over the defendant's tracks. It was essentially an assurance to plaintiff, driving upon the street, that no danger need be feared from an approaching train. While it may be true that she was not so far relieved of the duty to look and listen that she could go blindly and heedlessly upon the tracks, relying wholly upon the fact that the gates were not closed, nevertheless her duty to look and listen is to be regarded as modified, to a great extent at least, by the fact that the open gates constituted an invitation to go upon the tracks and assurance of safety on so doing." Many cases are cited supporting this proposition. It may be true, as suggested, that gates and devices operated by human intelligence are more to be relied on than automatic devices, but the difference is one of degree only, and is for the jury. The law accords with common experience and reason that persons approaching a railroad crossing when the view is obstructed depend on the sense of hearing to inform them of approaching trains and this hearing includes the hearing of such warning signals as law or custom or both require. And in such a case, when a person is regulating his speed and conduct so as to make hearing effectual and listens attentively and hears no train, because of defendant's fault in not giving the required signals, then he may proceed at an ordinarily safe speed on the theory that the crossing is safe; and where the evidence tends to show that he did this, the court cannot declare him

guilty of contributory negligence. [Moore v. Railroad, 157 Mo. App. 53, 66; 137 S. W. 5; Weller v. Railroad, 120 Mo. 635, 652, 23 S. W. 1061, 25 S. W. 532; Petty v. Railway, 88 Mo. 306, 318; Donohue v. Railroad, 91 Mo. 357, 363, 2 S. W. 424, 3 S. W. 848; Kennayde v. Railroad, 45 Mo. 255; Lueders v. Railroad, 253 Mo. 97, 161 S. W. 1159; Montgomery v. Railroad, 181 Mo. 477, 500, 79 S. W. 930.] In the present case the plaintiff says he listened attentively for the statutory signals required of an approaching train and for the ringing of the crossing gong indicating the same thing, and having this double assurance that no train was approaching, his act in approaching the crossing at six to eight miles per hour cannot be declared negligence as a matter of law.

It was suggested at the argument that the evidence does not show that the crossing gong, if ringing, would have commenced ringing sooner than plaintiff saw the train; but we think it fair to defendant to say that, since it maintained this warning device at this otherwise dangerous crossing in order to warn the ordinary traveler thereon, that same was so constructed as to reasonably accomplish that purpose and was not so constructed as to warn when warning would do no good.

The cause will therefore be reversed and remanded. *Cov, P. J.*, and *Farrington, J.*, concur.