SUSIE ROLLINSON, Respondent, v. JAMES W. LUSK and W. B. BIDDLE, Receivers of St. Louis and San Francisco Railroad, Appellants.

St. Louis Court of Appeals.   Opinion Filed January 6, 1920.

1. **RAILROADS: Crossings: Care Required by One About to Cross Tracks.** The measure of precaution to be observed by one about to cross a railroad track depends upon the circumstances and surroundings.

2. ———: ———: ———: **May Place Reliance on Gates.** While a traveler is not excused from the use of some care to avoid injury even while endeavoring to cross railroad tracks at a crossing supplied with gates and a flagman, yet where gates are maintained and the gate is open, it is a fact which a traveler may properly take into consideration and upon which he may place some reliance.

3. ———: ———: **Negligence: Contributory Negligence of Deceased a Question for the Jury.** In an action against a railroad company to recover damages for death of a minor alleged to have been negligently killed at a railroad crossing, evidence reviewed and *held* that deceased could not be held to have been guilty of contributory negligence as a matter of law and that the plaintiff made out a case for the jury.

4. **DEATH BY WRONGFUL ACT: Ordinances: Presumptions: Presumed that Deceased Relied on Observance of Speed Ordinance.** In an action against a railroad company to recover damages for death of a minor alleged to have been negligently killed at a railroad crossing, etc., the presumption is indulged in favor of deceased that she knew of the ordinance limiting the rate of speed of trains to twenty miles per hour, and that she relied on defendants' running their trains at a rate of speed not in excess thereof.

Rollinson v. Lusk.

5. **TRIAL PRACTICE**: Instructions: Instructions Not Supported by Evidence Properly Refused. Instructions which told the jury, among other things, that if the deceased neither looked nor listened for the approaching train, or if she did that she failed to heed what she saw or heard, then she was guilty of negligence which would bar plaintiff from recovering, etc., were properly refused where there was no testimony upon which to base such instructions.

6. **RAILROADS**: Instructions: Requested Instruction on Duty to Look and Listen Unwarranted by Facts Properly Refused. An instruction which told the jury that a railroad track is itself a warning of danger, and one who attempts to cross the same must look or listen for the approach of trains thereon before attempting to cross, and, if the view is obstructed, he must stop and then look and listen, and this duty continues until the crossing is accomplished, was properly refused, where the facts in the case do not bring it within the rule that, where a traveler's view is obstructed, he must stop and then look and listen.

7. ———: Death by Wrongful Act: Damages: Statutory Damages Part Penalty and Part Compensatory. Under section 5425, Revised Statutes 1909, as amended by the Laws of 1911, p. 23, which provides, among other things, that a corporation negligently killing any person while running, conducting, or managing any locomotive, car, or chain of cars, shall pay a penalty of not less than $2000 and not over $10,000, in the discretion of the jury, both penalty and compensatory damages are covered: the sum of $2000 is penalty, and the remainder up to the $10,000 limit being compensatory.

8. ———: ———: ———: Pleading: Evidence of Compensatory Damages Inadmissible Under Petition. Where plaintiff's petition alleged no facts to sustain a recovery for compensatory damages, no evidence was admissible thereunder in support of the compensatory part sought under the statute, and plaintiff is not entitled to recover anything in excess of the penalty of $2000 provided by statute.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Kent K. Koerner*, Judge.

AFFIRMED (*Conditionally*).

*W. F. Evans, E. T. Miller* and *A. P. Stewart*, for appellants.

(1) The demurrer to the evidence should have been sustained, and the peremptory instruction requested by

defendants at the close of the whole case should have been given. (a) No negligence in the running of the train was shown. In the absence of statutory or ordinance regulation fixing a speed limit, no rate of speed over a public crossing is negligence *per se.* Maher v. Railroad, 64 Mo. 267, 275; Burge v. Railroad, 244 Mo. 76, 103. The evidence fails to show that the necessary prerequisites to set in motion the ordinance relied on, and make it applicable to the Knox avenue crossing had been complied with. There was, therefore, no proof of a speed limit fixed by law over this crossing. (b) Under all the evidence deceased was guilty of contributory negligence as a matter of law. Schmidt v. Railway, 191 Mo. 215, 228, 229; Stotler v. Railway, 204 Mo. 619; Green v. Railway, 192 Mo. 131, 139; Laun v. Railroad, 216 Mo. 563, 580, 581; Mockowik v. Railroad, 196 Mo. 550, 570; Keele v. Railway, 258 Mo. 62, 76-78; Carlson v. Railway, 187 S. W. 842, 844, 845; Burnett v. Railway, 172 Mo. App. 51, 58; Gumm v. Railway, 141 Mo. App. 306, 314; Farris v. Railroad, 167 Mo. App. 392, 398; Landrum v. Railway, 178 S. W. 273, 275; Blain v. Railway, 184 S. W. 1142; Southern Railway v. Jones, 88 S. E. 178; Coyle v. Railroad, 94 Atl. 509; Penn. Railroad v. Pfuelb, 37 Atl. 1100; Romeo v. Railroad, 33 Atl. 24; Ellis v. Railroad, 48 N. E. 839; Cadwallader v. Railway, 128 Ind. 518; White v. Railway, 78 N. W. 585; (2) The court erred in admitting evidence that the crossing gate was open. The cause of action alleged in the petition was not predicated on negligence in permitting the gate to be open. (3) The court erred in admitting in evidence sections 2367 and 2371 of the Revised Ordinances of the city of St. Louis 1912. No proper foundation had been laid for the introduction of' said ordinances in evidence, and the evidence fails to show that the conditions precedent necessary to render said ordinances applicable to the Knox avenue crossing had been complied with. (4) Notwithstanding the open gate may have been an invitation to deceased to cross the

track and an assurance that the track could be crossed in safety, yet this did not absolve her from the duty to use her senses of sight and hearing to avoid a possible collision; and if, under the circumstances, the question of her contributory negligence was properly one for the jury, then instructions Nos. 1 and 3, requested by defendants, should have been given, and the court erred in refusing to give said instructions and each of them. Delaware, etc., R. Co. v. Welshman, 229 Fed. 82, 85; Rangeley v. Railway, 30 S. E. 386; Schnackenberg v. Railway, 93 Atl. 701, 702; 3 Elliott on Railroads, sec. 1157. (5) The court erred in giving of its own motion instruction No. 5, and in refusing to give instruction No. 5 requested by defendants. Said instruction of the court's own motion is clearly a comment on the evidence, while defendants' requested instruction withdrew from the consideration of the jury the evidence respecting the raised crossing gate. (6) The court erred in giving instruction No. 3 for plaintiff and in refusing to give instruction No. 6 requested by defendant's on the measure of damages. (a) There was neither allegation nor proof of pecuniary loss. Boyd v. Railway,, 249 Mo. 110; Johnson v. Railway, 270 Mo. 418; State ex rel. v. Ellison, 213 S. W. 459; Smelser v. Railway, 262 Mo. 25, 41, 42; Dunn v. Railway, 21 Mo. App. 188, 202-207. (b) Said instruction No. 3 is further erroneous in that it does not limit the recovery of compensatory damages to the period of deceased's minority. Calcaterra v. Iovaldi, 123 Mo. App. 347, 354; Howard v. Scarritt Est., 161 Mo. App. 552, 562. (7) The verdict is so excessive as to indicate that it is the result of passion and prejudice. It is grossly excessive in respect of compensatory damages. Furthermore, it is not supported by the evidence, since there was no evidence whatever to support a finding of compensatory damages. Hickman v. Railway, 22 Mo. App. 344, 352; Calcaterra v. Iovaldi, 123 Mo. App. 347, 354; Kelly v. Higginsville, 185 Mo. App. 55, 64; Leahy v. Davis, 121 Mo. 227, 233.

*T., Percy Carr* for respondent.

(1) The violation of a reasonable municipal ordinance regulating speed at crossings is negligence *per se.* Johnson v. Railroad, 259 Mo. 534; Edwards v. Railroad, 94 Mo. App. 36; Schlerth v. Railroad, 96 Mo. 509; Eswin v. Railroad, 96 Mo. 290; Klein v. Railroad, 90 Mo. 314; Karle v. Railroad, 55 Mo. 476; Hunt v. Railroad, 262 Mo. 271; Jackson v. Railroad, 157 Mo. 621; Sluder v. Transit Co., 189 Mo. 107; Stotler v. Railroad, 200 Mo. 107; Chappell v. United Railways Co., 174 Mo. App. 126; Otto v. Pryor et al., 193 S. W. 28 (2) The question of contributory negligence was properly submitted to the jury under the facts of this case. Otto v. Pryor et al., 193 S. W. 28; Edwards v. Railroad, 94 Mo. App. 42-50; O'Keefe v. Railroad, 108 Mo. App. 184; Gratiot v. Railroad, 116 Mo. 466; Wilkins v. Railroad, 101 Mo. 106; Dickson v. Railroad, 104 Mo. 504 Montgomery v. Railroad, 181 Mo. 500; Reid v. Schaff, Receiver, etc., 210 S. W. 86-87; Kenney v. Railroad, 105 Mo. 270; Russell v. Receivers, etc., 70 Mo. App. 88-90; Killingsworth v. Railroad, 209 S. W. 301.

BECKER, J.—Plaintiff instituted her suit in the circuit court of the city of St. Louis against the receivers of the defendant railroad company to recover damages for the death of her minor daughter, Dorothy Rollinson, the petition alleging that said daughter had been negligently killed at the railroad crossing of Knox avenue, a street in the city of St. Louis, on August 25, 1916, by a train operated by defendants.

Of the pleadings it is sufficient to state that the petition as one for simple negligence in the alleged violation of a speed ordinance of the city of St. Louis, which limits the running of steam railroad engines and trains within the limits of said city, over, along or across any crossing or intersecting improved street, avenue or road, to a rate of twenty miles per hour. The answer was a general denial and a plea of contributory

negligence on the part of the deceased. The reply was a general denial. It will be noted that under the pleadings the case proceeds as one for simple negligence and that the humanitarian doctrine is not involved in the case.

It appears that Dorothy Rollinson, on the day in question, lacked five days being eighteen years of age; was in good health, and had no trouble whatever with her eye sight or hearing, and was a girl of intelligence. She lived but a block or two from what is known as the Knox avenue crossing of the defendants' railroad, Knox avenue being a street running north and south. At this point three separate set of tracks, running parallel with each other, cross Knox avenue. They run on a gradual curve from the northeast to the southwest. The south track is the eastbound main track, the middle track is the westbound main track, and the north track is a switch track. On the west side of Knox avenue and south of the said tracks there was a store building from the corner of which a board fence ran north parallel with the street for a short distance and then turned west in the general direction of that of the railroad tracks. There was a concrete sidewalk on the west side of Knox avenue in front of the said store building, running almost to the railroad tracks. Crossing gates were maintained by the defendants at this crossing, one of such gates being situated north of the tracks, and the other south thereof. The base or support of the south crossing gate was distant about twelve feet from the south rail of the eastbound main track. On the morning in question the south crossing gate was out of order and was standing in a raised position.

Dorothy Rollinson, her sister and their mother, a widow, lived within a block or so of the Knox avenue crossing. On this particular morning Dorothy left the house shortly before eight o'clock and proceeded north along the sidewalk on the west side of Knox avenue to the crossing of the Frisco tracks. At this time a freight

train, or drag, consisting of some fourteen or fifteen cars, was moving on the westbound main track, and either while Dorothy was crossing the eastbound main track or just after she had crossed over the north rail of said track and stood waiting for the freight train to pass, an eastbound passenger train, known as the fast mail or Meteor, consisting of a locomotive and eight or nine heavy steel coaches, approached on the south track and struck and injured her so she died in a few hours. It appears that a person walking north on the west side of Knox avenue, just after passing the fence corner above referred to, would have a view to the west along the railroad tracks of from three to six hundred feet, and that the range of view along the tracks to the west would be increased as one approached nearer the track.

The case was tried to a jury who returned a verdict in favor of the plaintiff and against the defendants in the sum of $6750, and from a judgment rendered thereon the defendants in due course appeal.

I.

Let us first determine whether the case should have been submitted to the jury.

The measure of precaution to be observed by one about to cross a railroad track depends upon the circumstances and surroundings. [Schmidt v. Ry. Co., 191 Mo. 215. 90 S. W. 136.] And while the traveler is not excused from the use of some care to avoid injury, even while endeavoring to cross railroad tracks at a crossing supplied with gates and a flagman, yet where, as here, gates are maintained and the gate is open, it is a fact which a traveler may properly take into consideration and upon which he may place some reliance. [Wack v. Ry. Co., 175 Mo. App., 111, 157 S. W. 1070; Yonkers v. Ry. Co., 182 Mo. App. 588, 168 S. W. 307.]

One of defendants' witnesses stated on cross-examination that he had been a witness at the coroner's inquest held over the body of the deceased, and stated:

"I remember testifying before the coroner that I saw her turn and look to the west. At that time she was standing just over the north rail. She made a motion like she was looking. When I saw her turn and look west is when I heard the last whistle of the slow order, and the train at that time was about three hundred yards west of the crossing. From where I was sitting I could see this train coming around the curve. When that whistle was blown, and she turned and looked in that direction, I should think she didn't seem to notice any train in that direction. She then turned around and almost faced me."

"Don't know whether I testified before the coroner that when the engineer got within fifty or one hundred feet of her he sounded four or five blasts of the whistle, but suppose if I said it I just estimated it; I was east of the crossing. The engine was not any closer to her than fifty or one hundred feet when the sharp blasts were given; if anything, it was farther than that. I didn't hear any whistle given between the long whistle three hundred yards west of the crossing and the short, sharp warning whistle. I noticed the gates at the time, and the gate on the south side was about half way up when my train and the other train were both going by the crossing."

If the testimony of this breakman is to be believed the deceased was standing just north of the north rail of the eastbound track when the last whistle of the "slow order signal" was sounded, which whistle was. blown, according to his testimony, when the passenger train was about "three hundred yards west of the crossing." And according to his admission he had testified at the inquest that when the "slow order signal" was sounded, "saw the deceased turn and look west." There is testimony, which when taken in the light most favorable to plaintiff, made it impossible for the deceased to have seen the approaching train at that distance. And after that time, according to the brakeman, no further warning of the approach of this train

was given until the locomotive thereof was within fifty
to one hundred feet of her, if the testimony he admitted
he gave before the coroner is correct, or within one
hundred to two hundred feet of her, taking his evidence
at the trial; and furthermore, as to whether the
deceased could have heard the passenger train as it
approached, we must note that the brakeman testified:
''The train was making the usual noise that a passenger
train makes, but I couldn't hear it because I was on the
freight train,'' and that plaintiff stood within a few
feet of the same freight train.

According to police officer Ryan, who was
thoroughly familiar with the Knox avenue crossing,
and who arrived on the scene of the accident almost
immediately thereafter, ''the north gate was down and
the south gate, I will say, from half to two thirds of the
way up. There is something to obstruct the view
of a person approaching the Frisco tracks at Knox
avenue from the south, the view to the west side of Knox
avenue. . . . After you pass the corner of the fence
you can see about five or six hundred feet up the track;
the closer you get to the track the farther you can see
up the track around the corner. There is a sharp
curve and a great many sheds, and there is a fence
on the curve, and I should judge that you can see over
six or seven hundred feet after you got into the middle
of the track—believe you could see six or seven hundred
feet.''

Another police officer, Edward F. Dwyer, a witness
for plaintiff, and who also was thoroughly familiar
with the Knox avenue crossing, testified that he
arrived on the scene immediately after the accident;
that ''there is something in the way of obstruction to the
view westwardly along the track of anyone approach-
ing the tracks on the south at this point; there are
some buildings on the west side of Knox avenue on the
south side of the tracks, and also a fence. The effect
of the building and the fence upon the view of a person
coming as Dorothy Rollinson did, from the south and

approaching the railroad tracks, is such that you would have to be almost on the tracks before you could see any distance west on the railroad. That is especially true as to the inbound track, that is, nearest to the south. There is a curve for quite a distance south and west of that point. The track curving in this manner crosssses Knox avenue, I should judge, obliquely to a slight extent. The grade is slightly down to the east. . . ."

Lillian B. Jones who lived in a home immediately along the tracks of the said railroad company close to the scene of the accident, testified that the train had passed the crossing at the rate of fifty or sixty miles an hour, while N. L. Allen, who lived five hundred feet west of Knox avenue and whose lot extends back to the Frisco right-of-way, testified that the train was running "at least forty miles an hour."

From the facts gleaned from the record as we have set them out above, and taking them in the light most favorable to plaintiff, they are susceptible to the view that the deceased had already crossed over the nearest rail of the south tracks and had gotten to a point immediately north of the north rail thereof, when the approaching train gave the "slow order signal" whistle, and that plaintiff at that time looked to the west where she had a clear view of from nine hundred to one thous- and feet, and did not see the train in sight; that the freight train which was then in the act of passing in front of her, which contained some fourteen or fifteen cars, had passed by with the exception of perhaps five of the cars; that plaintiff after looking to the west turned her head toward the southeast and did not look again un- til she was struck by the passenger train which approach- ed at fifty to sixty miles an hour, the noise of the freight train being such that plaintiff did not hear the passenger train as it approached. The evidence in this record be- ing susceptible of such a construction, we are inclined to the view that plaintiff made out a case for the jury and deceased could not be held to have been guilty of con-

contributory negligence as a matter of law, particularly when it is shown that the south gate was up, and Dorothy Rollinson being dead there is the presumption indulged in her favor that she knew of the ordinance limiting the rate of speed to 20 miles per hour and that she relied on defendant's running their trains at a rate of speed not in excess thereof. That the gate was open and the deceased's reliance on the ordinance are of moment in this case in that a traveler at a railway crossing where gates are maintained as here, and the gate is open, can properly take that fact into consideration and place some reliance thereon; and under the ordinance limiting the speed of trains at such crossings to twenty miles per hour, the deceased, having looked when the "slow signal" blast of the whistle was sounded, and not seeing the train in sight, may well have concluded that no approaching train would reach the spot where she was standing until the few cars of the freight train yet remaining to pass would have passed and thus enable her to pass over these tracks and out of the way of any train approaching on the southbound track. In light of the record as outlined above we are of the opinion and so hold that the learned trial judge properly overruled defendants' instruction in the nature of a demurrer offered at the close of the case.

## II.

We next address ourselves to the assignment of error argued here by the defendants, that the court erred in refusing to give certain instructions requested by the defendants by which the question of deceased's contributory negligence was sought to be submitted to the jury.

We have examined each of these instructions and find that they were properly refused.

Defendants' refused instructions numbered one, two and four each told the jury, among other things, that if the deceased neither looked nor listened for

the approaching passenger train, "or if she did, that she failed to heed what she saw or heard, then she was guilty of negligence which will bar plaintiff form recovering in this case," and your verdict must be for the defendants in this case. These instructions were properly refused in that there was no testimony upon which to base that portion of the instructions which we have quoted. There is nothing in the record to indicate that the deceased at any time saw the passenger train or heard the passenger train approaching, because of the noise that was made by the freight train within a few feet of which the deceased was standing, Each of these instructions was therefore properly refused.

Defendants' instruction number three, which was refused by the court, reads (in part) as follows: "The court instructs the jury that a railroad track is itself a warning of danger and one who attempts to cross the same must look or listen for the approach of trains thereon before attempting to cross, and if the view is obstructed he must stop and then look and listen, and this duty continues until the crossing is accomplished."

The facts in this case do not bring it within the rule that where a traveler's view is obstructed he must stop and then look and listen. The most that can be said of the testimony relative to this railroad crossing is that a traveler approaching it can look up the tracks for the distance of three hundred feet when passing the gate crossing, which is twelve feet from the nearest or south rail of the southbound track, and that the view to the west enlarges as one approaches the tracks due to the fact that the tracks curve to the southwest from the Knox avenue crossing. For this reason the instruction was properly refused.

While we have this point under consideration it is well to note that plaintiff's main instruction, which covers the entire case and directs a verdict, properly covered the question of deceased's contributory negligence, and that the learned trial judge who admitted testimony to the effect that the south gate was open at

the time of the accident solely for the purpose of bearing upon the question of deceased's contributory negligence, of his own motion gave to the jury the following instruction:

"You are to consider the evidence relating to the south gate being raised only in so far as the same may relate to the issue of contributory negligence, and for no other purpose. If plaintiff recovers at all it must be on the allegation contained in her petition, to-wit, that deceased met her death as a direct result of the train being operated across Knox avenue in excess of twenty miles an hour."

Reading all given instructions tegether it is clear that the question of deceased's contributory negligence was properly submitted to the jury even though the instructions offered by defendants on this point had been refused by the trial court.

## III.

We next come to an assignment of error which in our view is well taken. It refers to the instruction on the measure of damages.

The court at the request of plaintiff gave the following instruction:

"The court further instructs you that if you shall find a verdict in favor of the plaintiff you will fix her recovery at an amount not less than $2000, and not in excess of $10,000, in the discretion of the jury."

And the court refused to give the following instruction asked by defendants:

"The court instructs the jury that if you find the issue in this case for the plaintiff, you cannot access in her favor as a penalty against defendants more than the sum of $2000; and you are further instructed that there is no evidence in this case to support a finding of compensatory damages, and if you find for the plaintiff, you will not assess any amount in her favor as compensatory damages above said penalty of $2000."

The court erred in refusing to give the defendants' requested instruction on the measure of damages and it was error to give said instruction for plaintiff. Section 5425, Revised Statutes of Missouri, 1909, as amended by the Laws of 1911, page 203, which provides, among other things, that a corporation negligently killing any person while running, conducting or managing any locomotive, car or chain of cars, shall pay a penalty of not less than $2000 and not over $10,000, in the discretion of the jury, covers both a penalty and compensatory damages. It is no longer open to question but that under this statute the sum of $2000 is the penalty and the remainder up to the $10,000 limit is compensatory. [Boyd v. Ry. Co., 249 Mo. 110, 155 S. W. 13, Ann. Cas. 1914; Johnson v. Ry. Co., 270 Mo. 418, 193 S. W. 827; State ex rel. Dunham, et al., v. Ellison —Mo.— 213 S. W. 459; Smelzer v. Ry. Co., 262 Mo. 25, 170 S. W. 1174; Colvin v. Ry. Co., —Mo. App.—, 200 S. W. 715.]

The petition in this case alleges no facts upon which to base a recovery for compensatory damages. Plaintiff's petition, it is true, in its prayer asks for damages in the sum of $10,000 yet alleges facts alone under which the plaintiff, if entitled to recover at all, is limited to the amount prescribed by statute as a penalty, namely, $2000 and no more. Plaintiff's petition having alleged no facts to sustain a recovery for any compensatory damages, no evidence was admissible thereunder in support of the compensatory part sought under the statute It follows that the instruction on the measure of damages as offered on the part of the defendants should have been given as it correctly declares the law applicable to this sase. [See cases cited supra].

There are several other assignments of error raised by the appellants which we have examined carefully but find each of them to be without merit and they are each of such character that in light of what we have stated in this opinion we do not think it necessary to set them forth in detail herein.

Because of the error in plaintiff's instruction on the measure of damages, which incorrectly sets forth the law with reference thereto, it is evident that the plaintiff is not entitled to recover anything in excess of the penalty provided by statute, namely, $2000. Therefore, upon the respondent remitting the sum of $4750, within ten days, the judgment is affirmed; otherwise the judgment is reversed and the cause remanded, with leave to plaintiff to amend her petition if so advised. *Reynolds, P. J.*, and *Allen, J., concur.*