THADEUS B. MOORE, Respondent, v. JAMES C. DAVIS, DIRECTOR GENERAL OF RAILROADS, Agent designated under the transportation act of 1920 in cause of action arising during Federal control of St. Louis Merchants Bridge Terminal Railway, Appellant.

St. Louis Court of Appeals. Opinion Filed May 2, 1922.

1. **RAILROADS: Injury at Crossing: Open Gates: Negligence: Contributory Negligence: Question for the Jury.** Where plaintiff, driv·ing an automobile truck, approached a railroad crossing provided with gates operated by a watchman, and on the gates being raised in his presence he did not stop but proceeded upon the crossing although a truck which he was following did stop, *held* under the evidence his action in attempting to cross and in failing to stop when the other truck stopped did not convict him of contributory negligence as a matter of law, and under the circumstances of the case that question was one for the jury.

2. ———: ———: ———: **Care Required: Look and Listen: Obstructions: Instructions.** In an action for personal injuries and property damage arising out of a collision between plaintiff's automobile truck and a locomotive engine at a public crossing, where gates were maintained and were open and closed upon the approach of trains or engines, an instruction authorizing a recovery if the jury found that plaintiff looked and listened for an approaching train, and that he was exercising for his own safety and protection the care and caution that an ordinarily careful and prudent person would exercise under the same or similar circumstances, was correct though he could not see or hear an engine approaching by reason of obstructions.

3. **INSTRUCTIONS: Contributory Negligence: Failure to Require Finding That Bell Was Not Ringing: Proper in View of Other Instructions.** In an action for damages by the driver of an automobile truck for injuries alleged to have been sustained in a collision at a public railroad crossing, an instruction for plaintiff on the question of contributory negligence which failed to require a finding that the engine bell was not ringing was proper where other instructions told the jury that if the bell was ringing plaintiff could not recover.

Moore v. Davis.

4. **RAILROADS: Injury at Crossing: Open Gates: Invitation to Cross.**
An automobile truck driver approaching a railroad crossing pro-
vided with gates operated by a watchman had a right to rely, on
the gates being up, as an invitation to cross, and he could not be
charged with notice of the fact that the railroad company desired
to lower the gates and could not do so because another truck was
under the gates.

5. **DAMAGES: Instructions: Omitting "Reasonable" Before "Com-
pensation:" Not Reversible Error.** In an action for damages for
personal injuries, an instruction permitting a recovery for such
sum as the jury may believe from the evidence will compensate the
plaintiff for bodily pain and mental anguish and also for such sum
as will compensate him for any permanent injury, omitting the
word "reasonable" before the word "compensation" was not re-
versible error.

6. ———: ———: **Measure of Damages: Permitting Recovery for Per-
manent Injury: Not Broader Than Petition.** In an action for dam-
ages for personal injuries, an instruction permitting a recovery for
bodily pain and mental anguish and for any permanent injury was
not erroneous as being broader than the allegations of the petition
where the only evidence of any permanent injury was to the deltoid
muscle of the plaintiff's shoulder, which permanent injury was al-
leged in the petition as an element of damage.

7. ———: **Excessive Damages: Verdict for $4,625 Not Excessive Under
the Evidence.** In an action against a railroad company for dam-
ages for personal injuries received in a collision at a crossing where
the evidence was to the effect that plaintiff received a permanent
injury to his left shoulder; that the muscles were atrophied and
wasted; that it was much lower than the right, and that he ex-
perienced great pain upon manipulation of the shoulder; and, as a
result he could not raise his left arm above a certain point, a ver-
dict of $4,625 was not excessive.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*J. L. Howell* and *W. M. Hezel* for appellant.

(1) The court erred in failing to give defendant's
requested instruction in the nature of a demurrer to the

evidence at the close of plaintiff's case in chief. (a) Plaintiff was guilty of contributory negligence as a matter of law under his own testimony even if the crossing gate was up, because: (1) Plaintiff did not rely upon any assurance of safety from the open gates nor construe such condition as an invitation to cross. Voelker Products Co. v. United Rys. Co., 185 Mo. App. 310; Paul v. United Rys. Co., 152 Mo. App. 577. (2) It appears by the testimony of plaintiff that engine bells were ringing, and his own failure to hear them was due, according to his own statement, to the noise made by his own truck over the crossing planks. (3) Not being able to hear warning signals, and his view being obstructed, as plaintiff states, it was plaintiff's duty to so have his auto truck under control as to have enabled him to stop it and prevent a collision when he could see or stop it so he could hear. Underwood v. Railroad, 182 Mo. App. 252; Kelly v. Railroad, 88 Mo. 534; Campbell v. Railroad, 175 Mo. 161; Elliott v. Railroad, 105 Mo. App. 523; (4) The rule of law, therefore, laid down in the following cases convicts plaintiff of contributory negligence as a matter of law. Keele v. Railroad, 258 Mo. 62; Laun v. Railroad, 216 Mo. 563; Schmidt v. Railway, 191 Mo. 215; Stotler v. Railway, 204 Mo. 619; Keeley v. Railway, 258 Mo. 62; Burnett v. Railway, 172 Mo. App. 51; Lundergan v. Railroad, 203 Mass. 460; Koch v. So. Cal. Ry. Co., 148 Cal. 677; Pennsylvania R. Co. v. Pfuelb, 60 N. J. L. 278. (2) Nothing in defendant's evidence aided plaintiff's case, for that evidence proved affirmatively: (1) That the gate could not be closed, due to the fact that Volz's truck was under the gate. (2) That the gateman sounded his gong. (3) That a switchman on crossing gave signals to vehicles to stop. (4) That the bell of the particular engine involved in the collision was ringing prior to, up to, and even after, the collision. The instruction in the nature of a demurrer to the evidence requested by the defendant at the close of the whole case should, therefore, have been given. (3) Court erred in giving plaintiff's requested instruction No. 1. Because

it hypothesizes a condition the plaintiff could not see or hear an engine approaching by reason of obstructions, yet permits a recovery if the jury found that plaintiff looked and listened for an approaching engine, though looking and listening were unavailing under the predicated situation. Authorities under point 1. (4) The court erred in giving plaintiff's requested instruction No.—: (1) Because it advised the jury that the gates, if found by them to be up at the time plaintiff passed through them and onto the tracks, was an invitation on the part of the defendant to the plaintiff to cross over the railroad tracks at that particular time, though the plaintiff's own testimony shows that he placed no reliance on such invitation. (2) Because it failed to submit to the jury the theory of the defendant that the gates were not down because of the presence of another truck stopped under the gates, a condition which, if existing, could not be construed to create one of invitation. (3) Because it did not require the plaintiff to have looked or listened under conditions when to look or listen would have been effective. Authorities under point 1. (5) The court erred in giving plaintiff's requested instruction No. 3 (Abs., p. 55), because it is not limited to reasonable compensation for any permanent injury resulting directly from the accident, and is vague and indefinite and contrary to defendant's instruction No. 6. (6) Because the verdict is excessive.

*Thomas B. Crews* and *Walter Naylor Davis* for respondent.

(1) In every instance, unless the fact be admitted, the matter of the credibility of the witnesses and the weight and value to be given to their testimony concerning the matter of which they speak, is for the jury to determine, and this is true though such evidence be not contradicted by other witnesses. Wack v. Railroad, 175 Mo. App. 111; Gannon v. Laclede Gas Light Co., 145 Mo. 502. (2) (a) Though it be that one is required

to look and listen before entering upon the tracks it would seem that besides being relieved of this obligation, in a measure, by the fact of the open gates operating as an invitation to enter and an assurance that no train was approaching, he should be regarded, after having found his way safely across the first track and into the second, as having exercised due care thereabout in the first instance. Such is the rule established by the St. Louis Court of Appeals and the Supreme Court. Yonkers v. Railroad, 182 Mo. App. 558; Wack v. Railroad, 175 Mo. App. 111; Cuccio v. Railroad Ass'n, 199 Mo. App. 365; Rollinson v. Lusk, 203 Mo. App. 31; Curlin v. St. Louis Mer. Br. Ter. Ry., 232 S. W. 215; Montgomery v. Railroad, 181 Mo. 477; McNamara v. Railroad, 126 Mo. App. 152; Edwards v. Railroad, 94 Mo. App. 36; Central Trust Co. v. Railroad, 27 Fed. 159. (b) Ordinary care does not require a traveler to constantly look and listen at all points of his approach to a railway crossing and while upon the track. Maloney v. United Railways, 183 Mo. App. 292; Strauchon v. Met. St. Ry., 232 Mo. 587. (c) The question of the contributory negligence of plaintiff was for the jury. Yonkers v. Railroad, 182 Mo. App. 558. (d) If plaintiff was placed in a position of peril by defendant's negligence, then plaintiff would not be guilty of contributory negligence as a matter of law in trying to escape, though he erred in a matter of judgment in attempting to do so. Frankel v. Hudson, 271 Mo. 495. (3) (a) Appellant's witness, Rex Thornton, yardmaster, testified that "he knew the gates were up, and knowing that he signaled the engineer to go ahead, and back across Bremen avenue." (b) Appellant's witness, John Irvin Girardi, fireman, testified that "he was on the west side of the engine, could see as far as the gates, and saw the gate was open. He first saw Mr. Moore's automobile about thirty feet away, and when five feet away he hollered to the engineer to stop; that the bell was not ringing after the accident as he grabbed the rope and stopped it." (4) Plaintiff's instruction No. 1 states the law and is applicable to the

facts. Plaintiff looked and listened before going on the crossing, and continued to look and listen after getting on the crossing, the duty of ordinary care was modified by the security into which defendant by its negligence had lulled plaintiff. Authorities cited under 2. (5) Plaintiff's instruction 2 was correct and stated the law. (1) Plaintiff undoubtedly relied on the invitation to cross over. (2) It expressly required the jury to find that the gates were up, and not necessary to submit the question of another truck stopped under the gate. O'-Keefe v. Railroad, 108 Mo. App. 177. (3) Plaintiff was only required to use ordinary care before entering upon the tracks as modified by his invitation to cross. (6) Plaintiff's instruction No. 3 was correct. It follows an approved instruction. Montgomery v. Railroad, 181 Mo. 477. (7) The verdict is not excessive.

BIGGS, C.—Plaintiff sues Walker D. Hines, Director General of Railroads, in charge of and operating St. Louis Merchants Bridge Terminal Railway, for personal injuries and property damage arising out of a collision between the plaintiff's automobile truck and a locomotive engine operated by defendant at a public crossing in the city of St. Louis. By a stipulation in this court James C. Davis successor to Walker D. Hines as such director, entered his appearance herein and was substituted as defendant-appellant.

Bremen avenue, a public street running east and west, crosses Hall street, another public thoroughfare running north and south. On Hall street and crossing Bremen avenue were six railroad tracks operated by the defendant. Beginning with the east of these tracks they may be numbered for the purposes of the case as numbers one, two, three, four, five, and six. Track No. 6 or the west track was termed a "team track" and curved sharply to the west from the crossing. The defendant maintained a crossing gate on both sides of the tracks, which gates were operated by a watchman stationed in a tower to the east of the six tracks, from

which tower the watchman had a view to the north and south along the tracks and also to the east and west along Bremen avenue. These gates, as was customary, were opened and closed on the approach of trains or engines. The tracks were of the usual standard guage, having a space of four feet, eight inches between the rails. There was a distance of seven or eight feet between each track.

Plaintiff charges that on August 15, 1918, he was driving his loaded automobile truck eastwardly on Bremen avenue; that as he approached near the intersection of Hall street, where said tracks and gates were maintained by defendant, and had approached to within one hundred feet of said gates, which were then lowered, the said gates were negligently and carelessly raised or opened by the defendant, and that the plaintiff following another automobile which had been waiting to pass eastwardly along said Bremen avenue over said tracks, proceeded along Bremen avenue over the defendant's tracks, and while so doing a locomotive engine negligently operated by the defendant ran into and struck plaintiff's truck, resulting in personal injuries to the plaintiff and damages to his said truck. It is further charged that the view of the approaching engine was obstructed by objects, and that plaintiff did not see or hear the approaching engine so as to stop and avoid it striking him until too late to do so; that the engineer in charge of said engine could, by the exercise of ordinary care, have seen the plaintiff and his automobile as aforesaid in time to have avoided striking plaintiff, but that the defendant through its agents and servants negligently failed to so look ahead and avoid striking plaintiff's automobile; that the said defendant by and through its employees in the control and operation of said engine negligently failed to ring the bell upon said engine, or to sound a whistle, or in any other manner to give warning to the plaintiff of the movements of said engine and the approach of same to said Bremen avenue over which the plaintiff at that time was driving.

The answer in addition to a general denial, contained a plea of negligence on the part of the plaintiff in driving his automobile upon the track directly in front of or in close and dangerous proximity to an approaching engine, and a further plea of negligence in driving the automobile upon the track without looking or listening for the approach of the engine, when by looking he could have seen, or by listening he could have heard, said engine in time to have remained off of the track and avoided the collision.

Upon a trial there was a verdict and judgment for plaintiff for the sum of $4,625, from which defendant has appealed, claiming principally that its demurrer to the evidence should have been sustained, it being contended that the evidence convicted plaintiff of contributory negligence as a matter of law. Error is also assigned in the giving of instructions, and a claim is made that the verdict is excessive.

Plaintiff a man 65 years of age, residing at Labadie, Missouri, engaged in the business of general hauling and trucking, was at the time in question passing eastwardly over Bremen avenue with a truck load of hogs. He testified: ''I was going east on Bremen avenue and came on to the tracks. I didn't know these were Terminal tracks or what they were at the time, and when I came in sight I supposed they were two blocks west. When I came in sight of the tracks the gates were down and there was another truck stopped and standing at the gate waiting for them to raise. When I got within 100 feet of the gate or tracks, the gates were still down and at about that distance they went up and this other truck that was standing there started. At that time I was right up behind the truck and was slowing up and near ready to stop. I was within a hundred feet of the truck as the gates raised and when this truck started I opened up my engine and went on. The track was clear and the gates raised and I just went on and didn't see this engine and couldn't possibly see it for a string of box-cars and the engine coming up behind these box-cars. I couldn't

possibly see it." (These box-cars were shown by other evidence to have been on the second track from the west and to the north of Bremen avenue.) "I was looking north and south and I was within four feet of it before I stopped, because this other truck was there stopped and standing, and I couldn't see this at all until we struck. I passed the other truck on the south side of it. The engine was coming from the north, that is, from my left, and was going south. I first noticed the engine in the act of striking and didn't have time to do anything. I had got on the track and would get a square lick but I swerved to the right to the south and got a side swipe instead of a square lick. I don't remember anything after the crash until I was up on my feet walking around. The box-cars were right up to the street, right up to the side of the highway. The gates were raised up as I was approaching and were up until after the collision."

On cross-examination plaintiff testified that he had been over this crossing quite often and knew of the presence of the railroad tracks; that he knew that it was a busy crossing with frequent train movements. He further testified: "I don't know whether the box-cars interfered with my view on the first two or three tracks. I think the engine was moving on the fourth track. I cannot say that I heard any bells ringing. My truck was rattling and making a noise. I won't say the engine bell was not ringing. If the bells were ringing I knew that such bells meant engine movements. I was not going over eight or ten miles an hour as I passed under the gates, and under the conditions that existed I could stop the automobile in a distance of about ten feet. The impact took place south of the middle of Bremen avenue. There were plank boards across the street constituting the crossing, and I think the crossing extended practically all the way across Bremen avenue from the north to the south. The automobile that was ahead of me was in Bremen avenue north of the middle line of the street. As I started to go around it this truck was standing on the second track from the west and I passed it on

its south side and couldn't see the engine on account
of this truck and the box-cars. In spite of the gates
being up I did look to the north and did look to the
south. When I got to the track next to the one on
which the engine was approaching I could not have
seen the engine because the box-cars and the truck ob-
structed my view.''

"Q. Why, if you were not expecting the approach
of any engine, did you look north and south? A. I
always do that. The fact that the gates were up did not
prevent me from exercising the caution of looking north
and south. Q. Well, why did you look to the north
and south then, if you felt it was safe to cross the tracks
after these gates were up? A. Because one going across
the railroads all his life would know it.''

Plaintiff further said that when he first saw the
engine it could not have been more than twelve or fifteen
feet from him, and at that time the front of his auto-
mobile was not more than seven or eight feet from the
point of impact. It appeared from plaintiff's testimony
that this other truck was about ten feet high with side
curtains and was about fifteen feet long, and that at the
time plaintiff didn't hear any bell ringing or whistle
sounded on the engine.

Another witness for plaintiff, who was driving the
other truck testified that the accident happened on the
fourth track from the west and that the box-cars were
standing on the second track north of Bremen avenue;
that when he reached the second track on which the box-
cars were standing to the north of Bremen avenue the
engine at that time was about 100 feet north; that he
stopped because he saw the engine approaching; that he
did not hear any bell or other warning given by the
engine, and that he did not know whether the bell was
ringing or not. He testified that the engine at that time
was running at the rate of six or eight miles an hour,
and ran about twenty or twenty-five feet after the col-
lision; that he did not know how fast plaintiff's truck
was going as it passed him, as he didn't see it until it

collided with the locomotive. This witness further testified that the gates were up and that he started across the track; that the box-cars kept him from seeing the engine until he got to a point to the east of the box-cars, where he then stopped because he had observed the approach of the engine from the north, and that he didn't remember hearing any bell or other warning.

A rule seems to be well established in these gate crossing cases. In Yonkers v. Railroad, 182 Mo. App. 558, 1. c. 568, it is stated thus: ''The fact that the gates were maintained, and that they were open at this particular time, necessarily constituted an invitation to one to pass upon and over the defendant's tracks. It was essentially an assurance to plaintiff, driving upon the street, that no danger need be feared from an approaching train. While it may be true that she was not so far relieved of the duty to look and listen that she could go blindly and heedlessly upon the tracks, relying wholly upon the fact that the gates were not closed, nevertheless her duty to look and listen is to be regarded as modified, to a great extent at least, by the fact that the open gates constituted an invitation to go upon the tracks and as assurance of safety on so doing. [See, also, Wack v. Railway, 175 Mo. App. 111, 157 S. W. 1. c. 1072; Swigart v. Lusk et al., 196 Mo. App. 471, 192 S. W. 138; Strotjost v. St. Louis Merchants Bridge Terminal Railway Company (St. Louis Court of Appeals), 181 S. W. 1082; Montgomery v. Railroad, 181 Mo. 477, 507, 79 S. W. 930; Rollinson v. Lusk, 203 Mo. App. 31, 217 S. W. 328.]

Defendant's counsel do not seem to controvert the rule, but assert that it has no application in the present case because it is said to appear conclusively from the evidence that the plaintiff did not rely upon any assurance of safety from the open gates, nor construe it as an invitation to cross. While it is true that the plaintiff did not affirmatively testify that he relied upon the open gates as an invitation to cross, we think it may reasonably be inferred from plaintiff's statement that he placed

some reliance upon the fact that the gates were raised. When he arrived within one hundred feet of the gates they were down and he made preparations to stop his automobile, but seeing them raised he proceeded eastwardly and went upon the crossing following the other truck in the rear and to the south of it. The gates were raised in the presence of the plaintiff, and this was an implied invitation to the plaintiff to cross, and that it was safe to attempt the crossing. Because the plaintiff testified that nothwithstanding the gates were raised he did look both north and south and listened for train movements, does not show conclusively that he placed no reliance upon the open gates. It may well be that notwithstanding the gates were raised in his presence, the plaintiff was still bound to look and listen for approaching trains, which he testified he did but was unable to observe the approaching engine by reason of the box-cars which obstructed his view and also the other truck which had stopped on the track and which he passed on its south side and away from the approaching engine. We do not think under the circumstances of the case that it could be said that plaintiff was guilty of contributory negligence as a matter of law in attempting to make the crossing in the first instance. Nor can it be said that he should be convicted of such negligence by reason of the fact that he failed to stop when upon the crossing because of the fact that the other truck had stopped. There is nothing to indicate that plaintiff knew that this other truck had stopped on the track because of the approaching train. Automobiles stop for various reasons. The plaintiff having once committed himself to the crossing it was natural that he should continue over the tracks, in the absence of knowledge of an approaching train, for to voluntarily stop upon a railroad track may well be said in itself to constitute negligence on the part of a traveler. Under the authority of the Yonker's case, supra, and the other cases referred to we do not think plaintiff could be convicted of contributory negligence as a matter of law. Under the circumstances

of the case that question was one for the jury, and the court did not err in refusing to sustain the defendant's demurrer to the evidence. [See, also, Atlantic Coast Line Co. v. Grubbs, 113 Va. 214.]

Complaint is made of the plaintiff's main instruction because it is said to authorize a recovery in the event plaintiff could not see or hear an engine approaching by reason of the obstructions, and permitted a recovery if the jury found the plaintiff looked and listened for an approaching train, though looking and listening were unavailing under the situation that existed. The instruction in addition to requiring a finding that plaintiff looked and listened, also required a finding that plaintiff was exercising for his own safety and protection the care and caution that an ordinarily prudent and careful person would exercise under the same or similar circumstances. In addition to having the assurance of safety given to him by reason of the gates being raised in his presence, the plaintiff looked both north and south for an approaching train and also listened before committing himself to the crossing. At that time he neither heard nor observed an approaching train, and could not be said to be guilty of negligence in going upon the track in the first instance. Not having seen nor heard any train movement at that time, and being assured by the opening of the gates that the crossing was safe, plaintiff was justified in proceeding on over the tracks. He was under no duty to stop his machine, in the absence of knowledge or information of danger. For him to have stopped while making the crossing, in the absence of information of danger, would have meant that he should stop upon a railroad track, itself a signal of danger. We perceive no error in plaintiff's main instruction.

Plaintiff's instruction No. 2 covering the question of contributory negligence is complained of. What has been heretofore said disposes of defendant's main objections to the instruction. As heretofore stated, the gates being up plaintiff had a right to rely on that as an invitation to cross, and he could not be charged with

210 M. A.—13

notice of the fact that the defendant desired to lower the gates and could not do so because the other truck was under the gates as was indicated by defendant's evidence. Nor do we think that the instruction should have required a finding that the engine bell was not ringing. Other instructions told the jury that if the bell was ringing, plaintiff could not recover. Plaintiff testified that he did not hear the bell, and unless he heard it, it would not affect the question of his negligence in the case.

Complaint is also made against the instruction on the measure of damages, which permitted a recovery for such sum as the jury may believe from the evidence will compensate the plaintiff for bodily pain and mental anguish, and also for such sum as will compensate him for any permanent injury, if any, which they may find and believe from the evidence he has suffered by reason of the injury in question. It is said that this instruction is erroneous because it does not limit the jury to a finding of reasonable compensation, and further because it permitted a recovery of damages for injuries beyond the purview of the allegations of the petition. We do not regard the omission of the word ''reasonable'' before the word ''compensation'' as reversible error. Nor do we regard the form of the instruction as being broader than the allegations of the petition, thereby permitting a recovery for injuries not alleged. The only evidence of any permanent injury in the case was to the deltoid muscle of plaintiff's shoulder, which permanent injury was alleged in the petition as an element of damage.

By an instruction given at defendant's request the jury were told that they could not allow any damages for any injury to the joint of the left shoulder as the claim in the petition was for injury to the deltoid muscle only so far as the shoulder is concerned. This instruction was quite favorable to the defendant on the question of the measure of damages, inasmuch as plaintiff claimed in the petition that his left shoulder was bruised and injured, in addition to an allegation that the deltoid muscle over the shoulder was permanently injured, and there

was evidence showing injury, although not permanent, to the shoulder, as distinguished from the deltoid muscle over the shoulder.

Lastly, it is asserted that the verdict is excessive. We do not so regard it in view of the plaintiff's evidence which must be accepted as true, which is to the effect that he received a permanent injury to his left shoulder that incapacitated him from performing manual labor, which was his occupation and calling. A physician testified that he found the muscles of plaintiff's left shoulder atrophied and wasted; that the left shoulder was much lower than the right and that plaintiff experienced great pain on manipulation of that shoulder; that as a result plaintiff could not raise his left arm above a certain point; that by reason of the nerves causing pain as plaintiff attempts to move the arm the muscles have atrophied by reason of disuse. Another physician gave similar testimony, and they both testified that in their opinion the injury was permanent. In view of other minor injuries the plaintiff received, it cannot be said that the verdict is so excessive as to require interference on our part.

As a result of what is herein said, it follows that the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.